Submitted August 21, 2012, appeal from supplemental judgment dismissed; otherwise affirmed August 14, 2013

Evan D. WHITE
and Patricia A. White,
*Plaintiffs-Appellants,*

*v.*

Jared VOGT
and Crystal Vogt,
property owners;
and City of Salem,
a municipal corporation,
*Defendants-Respondents,*

*and*

Kevin STONE,
Contractor,
*Defendant.*

Marion County Circuit Court
08C22773; A145286

308 P3d 356

Deryl K. Nielsen and Deryl K. Nielsen, P.C., filed the briefs for appellants.

Daniel A. Hill and Adams, Hill & Hess filed the brief for respondents Jared Vogt and Crystal Vogt.

Kenneth S. Montoya, Assistant City Attorney, filed the brief for respondent City of Salem.

Before Armstrong, Presiding Judge, and Hadlock, Judge, and Brewer, Judge pro tempore.

HADLOCK, J.

## HADLOCK, J.

Plaintiffs brought this action alleging violations of several provisions of the Salem Revised Code (SRC) stemming from excavation and construction of a home and a retaining wall on property that adjoins and lies downhill from their property. Defendants are Jared and Crystal Vogt, who own the neighboring property, Kevin Stone, the contractor who performed the excavation and construction, and the City of Salem. Plaintiffs asserted claims for declaratory relief, writ of review, writ of mandamus, negligence, and injunctive relief. They alleged that Stone had excavated the Vogts' property in a manner that removed lateral support for plaintiffs' property, leaving it vulnerable to landslides. Plaintiffs also alleged that the city had allowed the excavation and subsequent construction of a home and a retaining wall without properly conducting a landslide hazard analysis and without requiring Stone and the Vogts either to prove that the excavated slope is safe or to build a taller retaining wall and restore the slope to the minimum otherwise allowed by the SRC.

The trial court dismissed the claims against the Vogts and all but the writ of review claim against the city. On that claim, the court granted summary judgment in the city's favor. The court also awarded prevailing-party fees to the Vogts and the city as well as attorney fees to the Vogts. Plaintiffs appeal the limited judgment disposing of the claims against the Vogts and the city and the supplemental judgment awarding defendants their fees.[1] We dismiss the appeal from the supplemental judgment and otherwise affirm.

Before we recite the pertinent facts, an overview of some of the SRC provisions at issue is helpful. Two chapters in the code are pertinent. The first, SRC chapter 65, governs excavation and filling of property. SRC 65.040 generally describes conditions under which an excavation permit is required. SRC 65.050(a), which limits excavation under certain circumstances, provides, in part:

---

[1] Defendant Stone did not move for dismissal or summary judgment on the claims against him, and he is not a party to this appeal.

"Except as provided in this subsection and in SRC 65.080, no excavation shall leave a cut slope greater than two horizontal to one vertical.

"EXCEPTION: Excavations may exceed this limitation when they are in conjunction with a building permit and the final grade after backfill will not exceed a 2:1 slope."[2]

Under SRC 65.080, the limitations imposed in SRC 65.050

"may be varied by the director [of public works] if a qualified engineer designs and oversees the prescribed work and provides the director with all supportive data necessary to establish to his satisfaction that the alternative design provides equal or better safety, durability, and protection of adjacent property than compliance with the standards of SRC 65.050 * * *."

The second pertinent chapter, SRC chapter 69, addresses landslide hazards. SRC 69.030 provides that, except in circumstances not relevant here, a person may not engage in excavation or building construction "in areas designated on maps adopted under this chapter" without first obtaining any required permits or approvals. The referenced maps include "Landslide Hazard Susceptibility Maps" adopted by the city council that "indicate the general location of areas of low, moderate, and high susceptibility to landslides, and areas of known slide hazards." SRC 69.050. SRC 69.060 sets out the procedure by which the city must evaluate the landslide risk that a proposed activity will create:

"The Graduated Response Table 69-1, and the criteria set forth therein shall be used by Public Works staff to determine the level of site investigation for various types of regulated activity on property any portion of which is shown on Landslide Hazard Susceptibility Maps. Using a rating system, slope and physiographic conditions at the site are evaluated in relationship to a proposed activity. If

---

[2] As SRC 65.050(a) suggests, slope is defined by the ratio of run (horizontal) to rise (vertical) and can be expressed either as a ratio or a percentage. Thus, for example, a slope that is 45 degrees from horizontal is expressed as 1:1 or 100 percent, and a slope that is 22.5 degrees from horizontal is expressed as 2:1 or 50 percent. *See also* SRC 69.020(m) ("'Slope' is an inclined earth surface, the inclination of which is expressed denoting a given rise in elevation over a given run in distance.").

a rating meets or exceeds quantified thresholds provided in the table, a geological assessment or geotechnical report or both shall be provided by the applicant and action specified therein undertaken or insured before any regulated activity may be permitted or approved. Where any portion of the subject property on which regulated activities are proposed is identified under two slope conditions, or two or more physiographic and geologic categories, the highest condition or category will apply.

"(a)   For Low Landslide Risk Assessments, all regulated activities may proceed without further investigation, permitting, or approval requirements of this chapter.

"(b)   For Moderate Landslide Risk Assessments, a geological assessment shall be submitted by applicant and at applicant's expense for all regulated activities. If the geological assessment indicates that mitigation measures are necessary to safely undertake the regulated activity, High Landslide Risk Assessment requirements must be met. If the geological assessment indicates that no mitigation measures are necessary to safely undertake the regulated activity, all regulated activities may proceed.

"(c)   For High Landslide Risk Assessments, a geotechnical report prepared by a Certified Engineering Geologist and Geotechnical Engineer at the applicant's expense shall be submitted for all regulated activities."

The "Graduated Response Table 69-1" is appended to SRC chapter 69. It establishes a five-step procedure for determining whether the landslide risk is low, moderate, or high based on points assigned in the first three steps. Characterized broadly, points are assigned based on a property's susceptibility to earthquake-induced landslides (step one), susceptibility to water-induced landslides (step two), and the activity undertaken on the property (step three). Step four requires staff to total the points from the first three steps. Step five provides that the landslide risk is low if the point total is four or less, moderate if the total is five to eight points, and high if it is nine "or greater."

Finally, SRC 69.090 provides:

"No excavation or fill subject to the provisions of this chapter shall be made without an Excavation and Fill permit. The application for such permit, permit issuance, term,

termination, suspension or revocation, scope, application fee, appeal and violation relative to such permit shall be as set forth in SRC 65.110 through SRC 65.990. Excavation and fill permit requirements are in addition to other requirements of this chapter. Any geological assessment or geotechnical report required by this chapter shall accompany the Excavation and Fill permit application and shall receive approval in accordance with the provisions of this chapter prior to Excavation and Fill permit issuance."

With those provisions in mind, we turn to the facts. The facts material to our review are undisputed. Plaintiffs' property lies uphill from, and to the east of, defendant Vogts' property. In January 2008, Stone applied for a building permit to construct a dwelling on the Vogts' property. In early March—before the city had issued the building permit—Stone excavated approximately 1200 cubic yards of soil from the eastern side of the Vogts' property. Before doing the work, Stone did not obtain an excavation permit or otherwise notify the city that he intended to excavate. The upper edge of the "cut" left by the excavation is close to the fence separating plaintiffs' and the Vogts' properties. The original slope of the Vogts' property averaged somewhere between 30 percent and 40 percent, depending on how the property is measured.[3] Sometime after Stone did the excavating, plaintiffs hired a surveyor, who measured the slope of the cut in four different places. The surveyor determined the respective slopes to be 45.5, 82, 96, and 87.5 percent.

While Stone was excavating the property, a neighbor, Loriann Schmidt, called the city's code enforcement group to express concerns about the excavation. Mike Scholz, a building and safety supervisor, visited the site the next day and then called Schmidt. He told her that no excavation permit was required but that a geotechnical engineer would have to sign off on the plans before construction could begin.

_____

[3] Plaintiffs contend that the original average slope was 40 percent and that city officials incorrectly determined the original slope to have been 20 percent. That dispute does not affect our analysis on appeal. Although plaintiffs have contended throughout this case that the city's authorization of the retaining wall was based on its purportedly erroneous calculation of the slope, they have never explained how the original slope (or the miscalculation of it) led to the city's authorization of the retaining wall or to its alleged failure to properly conduct a landslide hazard analysis.

Schmidt also talked to Stone, who told her that he planned to obtain a geotechnical opinion on slope stability and that he was going to build a 10-foot-high retaining wall.

Around the same time, plaintiff Evan White met with Tom Phillips, the city's building and safety administrator. Phillips told White that "Stone did not have an excavation permit because the city does not require them" but that Stone "would be required to submit a plan for an engineered retaining wall." Nothing in the record indicates that the city evaluated whether the excavation created a landslide hazard risk.

Two weeks later, White met with Rebai Tamerhoulet, a supervisor with the city's plan review services. Tamerhoulet showed him "plans for exterior retaining walls of different heights, including one for construction of a ten-foot exterior detached retaining wall."

In April 2008, the city issued the building permit to Stone, and construction on the dwelling commenced. The city did not conduct a landslide hazard assessment under SRC chapter 69 before issuing the permit for the dwelling.

In September 2008, Stone applied for a separate building permit to construct a retaining wall on the Vogt property. With the application, he submitted an engineer's structural calculations and diagram for a four-foot-high wall along the bottom of the excavated cut. According to the engineer, backfilling behind a wall of that height would result in a slope of 100 percent. The city approved the design and issued the permit 12 days later. Nothing in the record indicates that the city conducted a landslide hazard assessment under SRC chapter 69 in connection with that permit. Stone built the wall as approved a few days later.

Plaintiffs commenced this action against Stone, the Vogts, and the city, initially seeking only declaratory relief. Over the course of several amended complaints, plaintiffs added petitions for writ of review and writ of mandamus and claims for negligence and injunctive relief. All of plaintiffs' assignments of error and supporting arguments on appeal are directed at their claims for declaratory relief and writ of review. Accordingly, we describe only those claims, and their procedural history, in any significant detail.

In the declaratory relief claim in the operative complaint, plaintiffs asked the court to declare the parties' respective rights, status, duties, and interests under the SRC and other laws. In the petition for writ of review, plaintiffs sought review of the city's decision to issue a permit for "construction of only one four-foot high detached exterior retaining wall which did not establish a final grade with a slope no steeper than 2H:1V (50%)." Plaintiffs' mandamus petition sought an order directing the city to conduct a landslide hazard risk assessment under SRC chapter 69 for all regulated activities that were conducted on the Vogt property. In their negligence and injunctive relief claims, plaintiffs alleged that the Vogts had breached their duty to provide lateral and adjacent support to plaintiffs' property and to minimize landslide hazards. They alleged further that the city had breached its duty to comply with and enforce all laws regulating activities in a landslide hazard zone.

The Vogts moved to dismiss the claims against them under ORCP 21 A(8) for failure to state ultimate facts sufficient to constitute a claim. They asserted that plaintiffs' declaratory relief claim failed to present a justiciable controversy, because the legal provisions that plaintiffs raised create no legal rights as between plaintiffs and the Vogts. With respect to the negligence and injunctive relief claims, the Vogts asserted that the complaint failed to allege any cognizable injury. Alternatively, the Vogts moved for summary judgment on each claim, asserting that there were no genuine issues of material fact as to whether there was a justiciable controversy between plaintiffs and the Vogts or whether the Vogts had injured plaintiffs.

The city moved to quash the writ of review and, alternatively, for summary judgment on that claim, and it moved to dismiss the other claims against it under ORCP 21 A(8). To assist the city's litigation efforts, Bryan Colbourne, a senior planner, conducted a landslide hazard assessment under SRC chapter 69, the results of which he described in two affidavits. Applying the Graduated Response Table, he determined that the Vogts' property scored zero points for earthquake-induced landslide susceptibility and three points for water-induced landslide susceptibility. Under step three of the table, under which points are assigned based on

the activity in question, he added one point for construction of a single-family dwelling. Based on the total of four points, he concluded that the landslide hazard risk was low and that no additional geological assessment was required. Phillips, the building and safety administrator, also prepared affidavits in which he asserted that the city had "followed correct procedures" in issuing the permits to Stone.

With respect to the writ of review, the city argued that affidavits from Phillips and Colbourne established that they had properly construed the applicable laws and had correctly followed the procedure set out in SRC chapter 69. As to the declaratory relief claim, the city argued that there is no justiciable controversy because none of plaintiffs' rights were implicated by the city's actions.

The trial court held a hearing on defendants' various motions in February 2010. The court first addressed the negligence claim, ruling that plaintiffs had neither alleged any damages nor, for purposes of the Vogts' alternative motion for summary judgment, adduced any evidence of damages. The court then opined that the city could assert another basis for dismissing the negligence claim against it—namely, that the writ of review was the only relief available to plaintiffs against the city. It noted that ORS 34.102 provides that the "decisions of the governing body of a municipal corporation acting in a judicial or quasi-judicial capacity and made in the transaction of municipal corporation business shall be reviewed only as provided in ORS 34.010 to 34.100 and not otherwise." The court stated that it believed that the city's decision was judicial or quasi-judicial. After a lengthy colloquy with counsel, the court ruled that the writ of review was plaintiffs' only appropriate action against the city, and it dismissed the remaining claims against the city. On the writ of review claim, the court concluded that the city's decision was supported by evidence in the record, and it granted summary judgment for the city. Finally, the court addressed the remaining claims against the Vogts. With respect to the declaratory- and injunctive-relief claims, it concluded that plaintiffs' allegations against the Vogts amounted to claims that the city should not have issued a building permit and had failed to follow its own rules in not requiring an

excavation permit, which the court did not view as a controversy between plaintiffs and the Vogts. Accordingly, it dismissed those claims for failure to state a claim.

Before the hearing concluded, plaintiffs' counsel informed the court that he had prepared a motion for summary judgment and served it on opposing counsel but had not yet filed it with the court. The court observed that its rulings would not be final until it signed a written order disposing of plaintiffs' claims, and it allowed plaintiffs to submit their motion, which they did.

Two weeks later, before ruling on plaintiffs' summary-judgment motion, the court entered a written order disposing of plaintiffs' claims consistently with its oral rulings at the hearing on defendants' motions. It entered a limited judgment of dismissal on March 19, 2010. In June 2010, the court entered an order and a limited judgment denying plaintiffs' motion for summary judgment.

The Vogts sought an award of attorney fees. Both the Vogts and the city also sought enhanced prevailing-party fees. The court granted both parties' motions on the ground that plaintiffs' pursuit of a negligence claim without alleging damages was unreasonable. It entered a supplemental judgment awarding those fees in January 2011.

On appeal, plaintiffs make numerous assignments of error concerning both the trial court's rulings on the merits of their claims and its awards of attorney fees and prevailing-party fees, which we address in turn. In their first assignment, plaintiffs contend that the trial court "erred in not granting plaintiff's complaint for declaratory relief and Motion for Summary Judgment." For the following reasons, we do not address the merits of that assignment of error. Because plaintiffs' claims against the city and the Vogts were resolved at the pleading and summary-judgment stage of the case, the only procedural vehicle by which the court *could* have ruled in plaintiffs' favor on their declaratory-relief claim was plaintiffs' own motion for summary judgment. As noted, the court denied that motion in an order and a limited judgment entered in June 2010. The court's

ruling on that motion is not properly before us, because plaintiffs did not file a notice of appeal from the June 2010 limited judgment. Rather, plaintiffs filed notices of appeal only from the March 2010 limited judgment granting defendants' dismissal and summary-judgment motions and from the January 2011 supplemental judgment awarding defendants fees and costs. Accordingly, our jurisdiction is limited to those matters, and we do not consider whether the trial court erred in denying plaintiffs' motion for summary judgment. *See* ORS 19.270(7) ("If a limited or supplemental judgment is appealed, the jurisdiction of the appellate court is limited to the matters decided by the limited or supplemental judgment * * *.").

In their second assignment of error, plaintiffs assert that the trial court erred in (1) granting the Vogts' motion to dismiss based on lack of a justiciable controversy and (2) granting the Vogts' motion for summary judgment. As noted above, the trial court granted the motion to dismiss after it concluded that plaintiffs' declaratory-relief claim against the Vogts amounted to a claim that the city should not have issued a building permit and had failed to follow its own rules in not requiring an excavation permit, which the court concluded was not a controversy between plaintiffs and the Vogts. Plaintiffs do not address the court's reasoning or offer any basis on which we could conclude that its reasoning was flawed. Nor do plaintiffs explain the basis for their challenge to the trial court's ruling on the Vogts' summary-judgment motion.[4] Accordingly, we do not disturb either of the court's rulings on the Vogts' claims.

In their third assignment of error, plaintiffs contend that the trial court "erred in granting (1) defendant City's Motion to Dismiss based upon lack of justiciable controversy and (2) Motion for Summary Judgment." The first part of that argument attacks a ruling that the trial court did not make. The trial court did not dismiss any of the claims against the city on justiciability grounds. Rather, it

---

[4] Indeed, plaintiffs do not identify where in the record the court's rulings can be found. *See* ORAP 5.45(4)(a)(ii) ("Each assignment of error must set out pertinent quotations of the record where the question or issue was raised and the challenged ruling was made, *together with reference to the pages of the transcript or other parts of the record quoted* * * *." (Emphasis added.)).

dismissed everything other than the writ-of-review claim on the ground that the writ of review is plaintiffs' exclusive remedy against the city. Because plaintiffs' justiciability argument is not directed against any ruling on which the trial court based its decision in the city's favor, we do not address it further.

The second ruling that plaintiffs identify as the subject of their third assignment of error is the grant of summary judgment in defendant's favor. But plaintiffs do not identify or address the basis for that ruling. Indeed, after the reference to the city's summary-judgment motion in the assignment itself, plaintiffs' brief does not mention that motion or the court's ruling on it again. Because plaintiffs have not presented any analysis of why the court's ruling might be incorrect, we do not disturb it.

We turn to the fourth assignment of error, in which plaintiffs challenge the trial court's ruling that the writ of review is their exclusive remedy against the city. According to plaintiffs, the city's actions involved no material discretion and were therefore purely ministerial, not quasi-judicial, and are thus not subject to a writ of review.

As plaintiffs' argument suggests, a court has writ of review jurisdiction only over decisions reached "in the exercise of judicial or quasi-judicial functions * * *." ORS 34.040. Decisions that are purely ministerial—those that involve no discretion—are not judicial or quasi-judicial. Plaintiffs contend that SRC 69.060 and the Graduated Response Table set forth "a clearly ministerial five-step procedure for the City to follow in issuing permits." They go on to assert that "the entire process is an application of criteria to facts in order to make a decision."

The starting point for determining whether a decision is quasi-judicial is *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979). There, in explaining the distinction between quasi-judicial decisions and legislative decisions, the Supreme Court set out three considerations that generally bear on the determination of whether a decision is quasi-judicial: (1) whether the process by which the decision was made, once begun, was bound to result in a decision; (2) whether the decision-maker

was bound to apply preexisting criteria to concrete facts; and (3) whether the decision was directed at a closely circumscribed factual situation or a relatively small number of persons. *Id.* at 602-03. The Supreme Court stated in *Koch v. City of Portland*, 306 Or 444, 448, 760 P2d 252 (1988), that, because the *Strawberry Hill 4 Wheelers* test "identifies the qualities necessary for a quasi-judicial act," it is sufficient to distinguish that type of act from other types, including purely ministerial acts.

This court, however, has acknowledged that the *Strawberry Hill 4 Wheelers* "formulation was never intended to serve as a complete, all-purpose list of 'elements' * * *." *Babcock v. Sherwood School District 88J*, 193 Or App 449, 453, 90 P3d 1036, *rev den,* 337 Or 556 (2004); *see also Estate of Gold v. City of Portland*, 87 Or App 45, 51, 740 P2d 812, *rev den,* 304 Or 405 (1987) (*Strawberry Hill 4 Wheelers* does not create an "all or nothing" test). And the Supreme Court's holding in *Koch* itself is illustrative. There, in holding that the Portland mayor's decision to suspend a police officer for violating a police-bureau rule was quasi-judicial, the court observed that the "evidence was weighed and a decision was made applying the rule to the factual situation as shown by the evidence. The Mayor had the discretion to find whether plaintiff had violated the rule and to determine the type and degree of sanction imposed." *Koch*, 306 Or at 449. In other words, one factor in determining whether a decision is quasi-judicial or ministerial is whether it involves fact finding. *See Oregon City v. Clackamas County, et al.*, 118 Or 546, 553, 247 P 772 (1926) (where the application of a statute or other law "required an investigation and inquiry [and] the exercise of discretion and judgment," the decision was an "exercise of judicial functions"); *Valsetz School Dist. No. 62 v. Polk Co.*, 53 Or App 18, 23-24, 630 P2d 1318 (1981) *aff'd*, 292 Or 385, 638 P2d 1148 (1982) (quoting *Oregon City* and concluding that a county's determination of how to distribute state forest revenues was not ministerial, because it required "more than a mathematical computation").

As we understand plaintiffs' argument on appeal, it is that a proper application of SRC 65.050(a) and SCR 69.060 could lead to only one result, given the undisputed facts in this case: the city would have had to require the Vogts to

obtain a grading or excavation permit. It follows, according to plaintiffs, that the city's decision was purely ministerial and did not involve the sort of exercise of discretion that may be challenged only through a writ of review. But plaintiffs did not cogently present that argument to the trial court. In that forum, plaintiffs only briefly suggested that a writ of review did not provide their only remedy against the city and, in doing so, they focused on *process*, indicating that the city might not have followed certain procedures mandated by the code. When the trial court attempted to pin down plaintiffs' argument on the availability (or exclusivity) of a writ of review, plaintiffs did not argue (as they do on appeal) that only one result could follow from proper application of the code, given certain undisputed facts. Rather, plaintiffs attempted to persuade the trial court that no *evidence* supported the city's decision—a contention that, as the trial court pointed out, would be in some tension with any argument that the city's acts were purely ministerial and did not involve any weighing of evidence or factfinding. Given that focus of plaintiffs' argument below, we cannot say that the trial court reasonably should have understood plaintiffs to be arguing that the city's decision-making process involved no exercise of discretion and, therefore, that a writ of review did not provide the appropriate vehicle for plaintiffs' challenge to the city's decision. Accordingly, the argument presented in plaintiffs' fourth assignment of error is not preserved for this court's review. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (to preserve an argument for appeal, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted").

Toward the end of the argument following their fourth assignment of error, plaintiffs contend that, "[e]ven if the writ of review is the appropriate vehicle for review, the trial court erred in dismissing plaintiff's request." We reject that argument without extended discussion, noting only that (1) the fourth assignment of error, by its terms, challenges only the trial court's decision that a writ of review provides the only possible available remedy; it does not challenge any

other ruling of the trial court, and (2) plaintiffs reargue certain aspects of their disagreement with the city's analysis without providing quotations from (or even citations to) the record establishing that they raised all of those issues in the trial court, as ORAP 5.45(4)(a) requires; that is, plaintiffs have not established that they adequately preserved their claims for appeal. In an appeal like this, which involves a voluminous record and unusually complicated claims for relief, compliance with ORAP 5.45(4)(a) is particularly important. *See* ORAP 5.45(4)(c) ("The court may decline to consider any assignment of error that requires the court to search the record to find the error or to determine if the error properly was raised and preserved."); *Frakes v. Nay*, 254 Or App 236, 251, 295 P3d 94 (2012) (declining to search a "voluminous trial court record to determine whether and when the asserted error occurred").

We turn briefly to plaintiffs' challenges to the trial court's award of attorney fees and prevailing-party fees. The court awarded those fees in a supplemental judgment that it entered after entering the limited judgment dismissing plaintiffs' claims against the city and the Vogts. At that time, no general judgment had been entered.[5] We have previously held that a "supplemental judgment arising from a limited judgment but entered before entry of the general judgment is not valid" and, therefore, not appealable. *Interstate Roofing, Inc. v. Springville Corp.*, 217 Or App 412, 426-27, 177 P3d 1, *adh'd to as modified on recons*, 220 Or App 671, 188 P3d 359, 224 Or App 94, 197 P3d 27 (2008), *aff'd in part and rev'd in part on other grounds*, 347 Or 144, 218 P3d 113 (2009); *see also* ORS 18.005(17) (a supplemental judgment is "a judgment that may be rendered *after a general judgment* pursuant to a legal authority" (emphasis added)). Accordingly, we must dismiss the appeal from the supplemental judgment.

Appeal from supplemental judgment dismissed; otherwise affirmed.

---

[5] When the trial court entered the limited judgment, plaintiffs' claims against Stone had not yet been resolved. The record does not indicate whether those claims have since been resolved or whether a general judgment has now been entered.