Argued and submitted November 21, 2013, reversed and remanded
April 22, petition for review denied September 10, 2015 (357 Or 743)

Stephanie HICKS,
*Plaintiff-Appellant,*

*v.*

CENTRAL POINT SCHOOL DISTRICT,
an Oregon school district;
and First Student, Inc.,
a Delaware corporation,
*Defendants-Respondents.*

Jackson County Circuit Court
113521E9; A151320

348 P3d 307

Sarah K. Drescher argued the cause for appellant. With her on the briefs was Tedesco Law Group.

Barrett C. Mersereau and Paul H. Trinchero argued the cause for respondents. On the joint answering brief were Thomas W. McPherson and Mersereau Shannon, LLP, and John M. Junkin, Paul H. Trinchero and Garvey Schubert Barer. With them on the joint reply brief was Barrett C. Mersereau.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Schuman, Senior Judge.*

LAGESEN, J.

---

* Duncan, P. J., *vice* De Muniz, S. J.; Lagesen, J., *vice* Wollheim, S. J.

**LAGESEN, J.**

Concerned that government jobs were being outsourced to private contractors under circumstances that either drove up costs for taxpayers or, alternatively, saved money for taxpayers solely by sacrificing family-wage jobs, the Oregon legislature amended the Public Contracting Code (the code)[1] in 2009 to address that concern. 2009 Or Laws, ch 880. As amended, the code requires (with some exceptions) that a public body considering entering into a service contract over $250,000 conduct a detailed cost-benefit analysis before making the decision to contract out government services. If that required cost-benefit analysis reveals that outsourcing the services at issue will be more expensive than providing them in-house with public employees, or shows that any cost savings will exist solely from the fact that a private contractor likely will pay its employees lower wages and benefits than those that would be paid to public employees, then the public body cannot outsource the services. *See generally* ORS 279B.030; ORS 279B.033.

This appeal requires us to assess how, if at all, the Central Point School District's (the district) cost analysis pertaining to the provision of student transportation services, and its related determination that that cost analysis authorized it to contract out with First Student for the provision of student transportation services, are subject to judicial review and, if they are reviewable, whether the district's cost analysis complied with statutory requirements. We conclude that the district's cost analysis, and its determination that that analysis permitted procurement, are subject to review in this action for declaratory relief, under the standard of review established by ORS 279B.145. We further conclude that the district's cost analysis did not comply with the requirements of the code, specifically, the requirements of ORS 279B.033. Those conclusions require us to reverse and remand to the trial court for further proceedings consistent with this opinion.

---

[1] According to ORS 279A.005, "ORS chapters 279A, 279B and 279C may be cited as the Public Contracting Code."

## I. REGULATORY, FACTUAL, AND PROCEDURAL BACKGROUND

Before 2009, a public body considering contracting out for the provision of government services was permitted to initiate the procurement[2] process without conducting any sort of cost-benefit analysis; such an analysis was not required by statute. As a result of the 2009 amendments to the code, *see generally* 2009 Oregon Laws, chapter 880, a public body considering conducting a procurement for services estimated to cost more than $250,000 now must conduct a more rigorous analysis before initiating the procurement process. With exceptions not applicable here, an agency considering contracting out for services must demonstrate either that it is not feasible for the contracting agency[3] to provide those services with its own personnel and resources or, alternatively, that it will cost less to procure the services from a private contractor than it will for the government to provide those services with its own personnel. ORS 279B.030 states, in relevant part:

"(1)   Except as provided in ORS 279B.036, before conducting a procurement for services with an estimated contract price that exceeds $250,000, a contracting agency shall:

"(a)   Demonstrate, by means of a written cost analysis in accordance with ORS 279B.033, that the contracting agency would incur less cost in conducting the procurement than in performing the services with the contracting agency's own personnel and resources; or

"(b)   Demonstrate, in accordance with ORS 279B.036, that performing the services with the contracting agency's own personnel and resources is not feasible."

ORS 279B.030(1).

---

[2] "Procurement" is another word for the governmental process of contracting for the purpose of acquiring goods or services. The code defines it as follows:

"'Procurement' means the act of purchasing, leasing, renting or otherwise acquiring goods or services. 'Procurement' includes each function and procedure undertaken or required to be undertaken by a contracting agency to enter into a public contract, administer a public contract and obtain performance of a public contract under the Public Contracting Code."

ORS 279A.010(1)(w).

[3] As defined in the code, "'[c]ontracting agency' means a public body authorized by law to conduct a procurement." ORS 279A.010(b). ·

ORS 279B.033, in turn, details what information must be contained in the mandatory cost analysis, and explains how that cost analysis governs the contracting agency's authority to pursue procurement. *See generally* ORS 279B.033. After setting forth the required contents of the cost analysis, the statute explains that, subject to an exception for time-sensitive work, a contracting agency may proceed with the procurement process only if the cost analysis demonstrates that it would be more expensive for the government to perform the services in question with its own staff and resources. *Id.* Further, even if the cost analysis indicates that it would be more expensive for the contracting agency to perform the services in question with its own staff and resources, procurement is nonetheless prohibited if the estimate reflects that the only reason for any cost savings stems from the fact that a private contractor's costs for wages, salary, and benefits are estimated to be lower than the contracting agency's costs for wages, salary, and benefits in connection with the services at issue.[4] *Id.* Although the statute does not require a contracting agency to seek public input or conduct any sort of public process when preparing the cost analysis required by ORS 279B.033, and determining whether procurement is authorized in the light of the cost analysis, the statute specifies that the cost analysis and related determinations must be maintained as public records: "A cost analysis, record, documentation or determination made under this section is a public record." ORS 279B.033(3). Pursuant to ORS 279B.145, a contracting agency's cost analysis under ORS 279B.033, and its related determination as to whether the cost analysis allows for procurement, are "final and conclusive unless they are clearly

_____

[4] Specifically, ORS 279B.033(2)(a) provides:

"After comparing the difference between the costs estimated as provided in subsection (1)(a) of this section with the costs estimated as provided in subsection (1)(b) of this section, except as provided in paragraph (b) of this subsection, the contracting agency may proceed with the procurement only if the contracting agency would incur more cost in performing the services with the contracting agency's own personnel and resources than the contracting agency would incur in procuring the services from a contractor. The contracting agency may not proceed with the procurement if the sole reason that the costs estimated in subsection (1)(b) of this section are lower than the costs estimated in subsection (1)(a) of this section is because the costs estimated in subsection (1)(b)(A) of this section are lower than the costs estimated in subsection (1)(a)(A) of this section."

erroneous, arbitrary, capricious or contrary to law." ORS 279B.145.

The district is a public body governed by the code and, in particular, by the requirements of ORS 279B.030 and ORS 279B.033. Based on concerns that its bus fleet was aging and would soon need to be replaced, the district decided to explore the option of contracting its transportation services to a private company. The district asked Robinson, its director of business services, to complete a cost analysis, which she prepared and presented to the district's board of directors at its public meeting in March 2011. In preparing her cost estimate, Robinson did not obtain any information from which to estimate salary or wage and benefit costs for contractors involved in performing student transportation services; instead, Robinson chose to assume that a private contractor would have the same wage, salary, and benefit costs as the district.

At the March meeting of the district's board of directors, the board approved Robinson's cost analysis and directed the issuance of a request for proposals (RFP) for student transportation services. Then, in May 2011, after receiving defendant First Student's RFP, the district hired Fairchild, a transportation consultant, to provide a supplemental cost analysis in light of First Student's RFP. In his supplemental cost estimate, Fairchild, like Robinson, assumed that a contractor's wage or salary and benefit costs would be the same as the district's, and did not collect information from which to estimate those costs. A subcommittee of the board studied the First Student RFP and the Robinson and Fairchild cost analyses and recommended acceptance of First Student's RFP. After a hearing on June 14, 2011, the board declared its intention to contract with First Student. The district subsequently executed a service contract with First Student. Approximately one week later, the district laid off its student transportation employees, including plaintiff, who had been employed as a bus driver for the district.

Within a few weeks of receiving notice that she was being laid off, plaintiff initiated this action for declaratory and injunctive relief under ORS 28.010 to 28.160.

She alleged that the district had entered into the contract with First Student "unlawfully, in violation of ORS 279B.030(1)(a)[.]" Plaintiff's theory was that the contract between the district and First Student was unauthorized—and, thus, "void"—because, in plaintiff's view, the cost analyses conducted by the district did not comply with the requirements of ORS 279B.033. As a remedy for the alleged illegality in contracting procedure, plaintiff requested (1) a declaration that the district "violated ORS 279B.030(1)(a) by failing to conduct a cost analysis in accordance with ORS 279B.033 before conducting a procurement for transportation services"; (2) a declaration that the contract between the district and First Student is "void"; (3) an injunction barring defendants from implementing the contract; (4) an order compelling the district to reinstate her to her job, and to pay her any lost wages and benefits; and (5) any other "just and equitable" relief.

Plaintiff thereafter moved for partial summary judgment solely on the issue of whether the district's cost analysis satisfied the requirements of ORS 279B.033.[5] The district filed a cross-motion for summary judgment on the same point, arguing that the undisputed facts demonstrated that its cost analysis complied with ORS 279B.033, completely defeating plaintiff's claim.[6] On its own, the court addressed the threshold jurisdictional issue of whether plaintiff should have brought the case as a writ of review under ORS 34.010, rather than as a declaratory judgment action. The court concluded that plaintiff properly brought the action as a declaratory judgment action. The court then concluded that the district's cost analysis complied with ORS 279B.033, and

---

[5] The parties originally had not been aware of the estimate prepared by Robinson. First Student discovered it after the summary judgment record had closed and moved for leave to re-open the summary judgment record to submit that estimate in connection with its opposition to plaintiff's motion for partial summary judgment and in support of the district's cross-motion for summary judgment. The trial court granted the motion.

[6] In their motions, the parties did not address the other legal issues raised by plaintiff's complaint: whether any deficiency in the cost analysis would have the effect of voiding the contract and whether plaintiff would be entitled to reinstatement and back wages if the contract was void, either by virtue of some independent source of law or as a product of the court's remedial authority under the Uniform Declaratory Judgments Act. The district also argued that plaintiff's action was barred by laches.

that, consequently, the district permissibly proceeded with the procurement that led to the contract with First Student. Based on that conclusion, the court entered a general judgment dismissing the complaint with prejudice.[7]

On appeal, plaintiff assigns error to the trial court's ruling that the district's cost estimates satisfy the requirements of ORS 279B.033; she asserts that the trial court erred by granting the district's motion for summary judgment.[8] Defendants cross-assign error to the trial court's jurisdictional conclusion that plaintiff could challenge the district's cost analysis and to its determination that procurement was authorized in a declaratory judgment action, and was not required to proceed by way of writ of review.

We conclude that the district's cost analysis and its determination that that analysis authorized procurement were not reviewable by way of writ of review and that the trial court therefore had jurisdiction over this declaratory judgment action. However, we conclude that the trial court erred when it determined that the two cost analyses on which the district relied complied with the requirements of ORS 279B.033 and, therefore, erred when it granted the district's motion for summary judgment. We therefore reverse the general judgment of dismissal and remand for further proceedings consistent with this opinion.

## II. STANDARDS OF REVIEW

The threshold jurisdictional issue of whether the district actions challenged by plaintiff were subject to review by writ of review under ORS 34.010 to 34.102 (and, correlatively, not subject to review in this declaratory judgment action under ORS 28.010 to 28.160), presents a question of law. *See, e.g., Strawberry Hill 4 Wheelers v. Benton Co. Bd.*

---

[7] We note, as we reiterated in *Butcher v. McClain*, 244 Or App 316, 329 n 2, 260 P3d 611 (2011), that a declaratory judgment action is not properly subject to dismissal, except for want of a justiciable controversy. However, the parties have not raised any issues regarding the form of the trial court's disposition.

[8] Plaintiff also assigns error to the trial court's decision to re-open the summary judgment record to permit the submission of the cost estimate performed by Robinson. That decision was within the trial court's discretion, *see Finney v. Bransom*, 326 Or 472, 479, 953 P2d 377 (1998) (trial court's modification of ORCP 47 C time lines reviewed for abuse of discretion), and we reject plaintiff's challenge to it without further discussion.

*of Comm.*, 287 Or 591, 602-04, 601 P2d 769 (1979) (artic-
ulating legal analysis); *Hood River Valley v. Board of Cty.
Commissioners*, 193 Or App 485, 493-99, 91 P3d 748 (2004)
(same). We therefore review for legal error the trial court's
determination that plaintiff was not required to bring this
challenge by way of writ of review.

We generally review a trial court's ruling on cross-
motions for summary judgment to determine "whether
there are any disputed issues of material fact and whether
either party was entitled to judgment as a matter of law."
*Vision Realty, Inc. v. Kohler*, 214 Or App 220, 222, 164 P3d
330 (2007). Here, the underlying facts are not disputed; the
only question is one of law. Plaintiff argues that the dis-
trict's cost analyses must be set aside under ORS 279B.145
as "contrary to law," asserting that the cost analyses do not
satisfy the requirements of ORS 279B.033(1). Whether the
cost analyses comply with ORS 279B.033(1) presents a ques-
tion of statutory construction that we review for legal error,
with the goal of determining the intended meaning of the
statute by examining the statute's text in context, consider-
ing any relevant legislative history. *State v. Gaines*, 346 Or
160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor
and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

## III. ANALYSIS

### A. *Jurisdiction*

Because it is potentially dispositive, we first address
defendants' cross-assignment of error, in which they con-
tend that the district's decision to engage in a procurement
process was "quasi-judicial" and reviewable only by writ of
review and, therefore, not by way of a declaratory judgment
action. When a writ of review under ORS 34.010 to 34.102
is available to challenge a local government's action, the
writ of review provides the exclusive mechanism by which
such action may be challenged, depriving a court of juris-
diction to review the challenged action under the Uniform
Declaratory Judgments Act, ORS 28.010 to 28.160. *State
ex rel City of Powers v. Coos County Airport*, 201 Or App 222,
230, 119 P3d 225 (2005), *rev den*, 341 Or 197 (2006); *League
of Oregon Cities v. State of Oregon*, 334 Or 645, 652, 56 P3d
892 (2002). As a result, if the district's cost analyses and

determination that those analyses authorized the district to engage in procurement would have been reviewable through a writ of review proceeding under ORS 34.010, then the trial court lacked jurisdiction over this proceeding.

Before analyzing whether the district's cost analyses and its determination that those analyses authorized procurement would have been reviewable by writ of review under ORS 34.010 to 34.102, we make two observations. First, it is clear to us that the legislature intended that a contracting agency's cost analysis under ORS 279B.033(1), and its related determination under ORS 279B.030(1) and ORS 279B.033 as to whether procurement is authorized, would be subject to judicial review in *some* type of proceeding. That is because the legislature expressly supplied a *standard* of review for those determinations. As noted, ORS 279B.145 provides, in relevant part, "The determinations under ORS 279B.030 [and] 279B.033 * * * are final and conclusive unless they are clearly erroneous, arbitrary, capricious or contrary to law." That provision would serve no purpose if a contracting agency's cost estimates and related determinations under ORS 279B.030 and ORS 279B.033 were not subject to review at all.[9]

Second, it is equally clear that the legislature provided no specific mechanism for review of determinations under ORS 279B.030 and ORS 279B.033. ORS 279B.400 to 279B.425 describe review procedures for the different types of public contracts and different phases of the contracting process, but the cost analysis under ORS 279B.033 and the decision that procurement is authorized are not among them.[10] There is no provision in ORS chapter 279A or 279B

[9] The legislative history of the 2009 amendments to the code also supports the conclusion that the legislature contemplated that the cost analysis would be subject to review. Audio Recording, House Committee on Rules, HB 2867, May 27, 2009, at 1:29:42 (testimony of Melissa Unger, representative of SEIU and a coalition of bill proponents), https://olis.leg.state.or.us (accessed Jan 13, 2015).

[10] For example, a "class special procurement" by the director of the Department of Administrative Services "constitutes rulemaking and not a contested case under ORS chapter 183," and may be challenged by "any affected person" under ORS 183.400. ORS 279B.400. A state contracting agency's approval of a "contract-specific special procurement" or a "solicitation" is reviewable by the circuit court under the Administrative Procedures Act (APA), ORS 183.484. ORS 279B.400(3)(a); *see* ORS 279B.405(7). A local contracting agency's approval of a "special procurement" or a "solicitation" is subject to challenge by writ of review under ORS

describing a review process for violation of ORS 279B.030 or ORS 279B.033. In fact, ORS 279B.420 describes the exclusive judicial remedies for violations of ORS chapter 279B for which "a judicial remedy is not otherwise provided" in ORS chapter 279A or 279B, but specifically exempts from its scope the provisions of ORS 279B.030 and ORS 279B.033 at issue here, among others.[11]

chapter 34. ORS 279B.400(4)(a); *see* ORS 279B.405(7). Judicial review of a contract award is pursuant to procedures described in ORS 279B.415.

Generally, before judicial review, a protest relating to any phase of the public contracting process must first be brought to the contracting agency. *See, e.g.*, ORS 279B.400(1) (special procurements); ORS 279B.405(2) (solicitations); ORS 279B.410(2) (contract awards); ORS 279B.425(2) (review of prequalification and debarment decisions).

[11] ORS 279B.420 provides, in part:

"(2) If a contracting agency allegedly violates a provision of this chapter, except a provision of ORS 279B.030, 279B.033, 279B.036, 279B.270, 279B.275, 279B.280 or 279B.400 to 279B.425, and a judicial remedy is not otherwise provided in this chapter or ORS chapter 279A, the alleged violation is subject to judicial review only as provided in this section.

"(3) A person may seek judicial review under this section for a violation described in subsection (1) or (2) of this section only if:

"(a) A public contract is about to be awarded or has been awarded;

"(b) The alleged violation of a provision of this chapter or ORS chapter 279A, except a provision of ORS 279B.030, 279B.033, 279B.036, 279B.270, 279B.275, 279B.280 or 279B.400 to 279B.425, occurred in the procurement process for the public contract and the alleged violation resulted in or will result in an unlawful award of a contract or an unlawful failure to award the contract;

"(c) The alleged violation deprived the person of the award of the contract or deprived the person of the opportunity to compete for the award of the contract;

"(d) The person was qualified to receive the award of the contract under ORS 279B.110;

"(e) The person gave written notice that described the alleged violation to the contracting agency not later than 10 days after the date on which the alleged violation occurred and, regardless of when the alleged violation occurred, not later than 10 days after the date of execution of the contract;

"(f) The person has exhausted all administrative remedies the contracting agency provides; and

"(g)(A) The alleged violation is a violation of a provision of ORS chapter 279A and no other section of ORS chapter 279A, 279B or 279C provides judicial review; or

"(B) The alleged violation is a violation of a provision of this chapter, except a provision of ORS 279B.030, 279B.033, 279B.036, 279B.270, 279B.275, 279B.280 or 279B.400 to 279B.425, and no other section of this chapter or ORS chapter 279A provides judicial review.

Consequently, we are confronted with a clear legislative intention to afford judicial review of determinations under ORS 279B.030 and ORS 279B.033, but no legislative indication as to the type of proceeding in which that review should occur. Our case law suggests that a declaratory judgment action provides an appropriate mechanism for providing such review. *See, e.g., Hinkley v. Eugene Water & Electric Board*, 189 Or App 181, 184-87, 74 P3d 1146 (2003) (taxpayer had standing to pursue declaratory judgment action challenging utility's failure to comply with competitive bidding requirements of the code). And if the challenged actions were not reviewable by way of writ of review, defendants do not dispute that plaintiff has otherwise sufficiently alleged a justiciable controversy under the Uniform Declaratory Judgments Act, or otherwise assert that review under the Uniform Declaratory Judgments Act is improper.[12]

_____

"(4) If a state contracting agency allegedly commits a violation, the Circuit Court for Marion County or the circuit court for the county in which the principal offices of the state contracting agency are located may review the alleged violation under ORS 183.484.

"(5) If a local contracting agency allegedly commits a violation, the circuit court for the county in which the principal offices of the local contracting agency are located may review the alleged violation by means of a writ of review under ORS chapter 34."

From our review of the legislative history of the 2009 amendments, we have been unable to discern why the legislature chose to exempt determinations under ORS 279B.030 and ORS 279B.033 from the catch-all review provisions of ORS 279B.420. One possibility is that the legislature recognized that the persons intended to be protected by the new requirements and, thus, most likely to be harmed by a contracting agency's failure to comply with those new procedures—taxpayers and public employees—generally would not be eligible to pursue review under ORS 279B.420, which requires that a person seeking review under its provisions be, in effect, a disappointed bidder in the procurement process.

[12] We independently conclude that plaintiff has alleged sufficient facts in the complaint to demonstrate a justiciable controversy under ORS 28.010 by alleging that she has suffered an injury that can be redressed through declaratory relief. *See Doyle v. City of Medford*, 356 Or 336, 372, 337 P3d 797 (2014) (justiciability requirements for declaratory judgment are satisfied by showing that rights, status, or other legal relations are affected by the relevant statute); *see also Morgan v. Sisters School District #6*, 353 Or 189, 194-200, 301 P3d 419 (2013) (to allege a justiciable controversy under the Uniform Declaratory Judgment Actions, a plaintiff must allege facts showing that declaratory relief will have practical effect of remedying or preventing some nonspeculative injury to the plaintiff). Here, plaintiff has alleged that she lost her job as a direct result of the district's erroneous determination under ORS 279B.030 and ORS 279B.033 that it was authorized to contract out for student transportation services, and has further alleged that she would be entitled to court-ordered reinstatement and lost wages and benefits if a court were to determine that the district's cost estimates did not

We conclude that the district actions challenged in this proceeding were not reviewable by way of writ of review. A writ of review is available only to review governmental decisions made through "the exercise of judicial or quasi-judicial functions[.]" ORS 34.040. "A judicial or quasi-judicial function is one that involves or requires an adjudicatory process." *Koch v. City of Portland*, 306 Or 444, 448, 760 P2d 252 (1988). Accordingly, the central question presented to us is whether the process of preparing a cost analysis, and then determining whether that cost analysis allows for procurement, resulted from an adjudicatory process. To answer that question, we look to the criteria identified by the Supreme Court in *Strawberry Hill 4 Wheelers*.

In *Strawberry Hill 4 Wheelers*, the Supreme Court identified several criteria to guide the determination of whether a decision-making process was quasi-judicial: (1) Was the process, once begun, bound to result in a decision? (2) Was the decision-maker bound to apply preexisting criteria to concrete facts? (3) Was the decision directed at a closely circumscribed factual situation or a relatively small number of persons? 287 Or at 602-03. We have observed that the existence and nature of the procedural requirements governing the determination at issue also inform the determination of whether a process is quasi-judicial. *Hood River Valley*, 193 Or App at 498-99. The criteria are not "elements" of a quasi-judicial function; instead, they are characteristics that might indicate that a disputed action or decision-making process was judicial or quasi-judicial, as opposed to ministerial or legislative.[13] *White v. Vogt*, 258

comply with ORS 279B.033 and that that error rendered the contract between the district and First Student void. Although it is unclear at this point the extent to which plaintiff will be able to prevail on the merits on that theory—that is, it is not clear that plaintiff is correct that the alleged statutory violations by the district render the contract "void" or that the law entitles her to reinstatement and back wages in the event that the contract is "void"—at this point, plaintiff has sufficiently *alleged* a justiciable controversy regarding the proper construction and application of ORS 279B.030 and ORS 279B.033 under the Uniform Declaratory Judgments Act under the standards set forth in *Doyle* and *Morgan*, and nothing in the district's cross-motion for summary judgment put at issue those allegations of justiciability in a way that required plaintiff to come forth with evidence to support them or otherwise demonstrate their viability.

[13] In *Babcock v. Sherwood School District 88J*, 193 Or App 449, 453-54, 90 P3d 1036, *rev den*, 337 Or 556 (2004), we said,

Or App 130, 142, 308 P3d 356 (2013). In other words, the *Strawberry Hill 4 Wheelers* criteria are not to be applied as a bright-line test devoid of context. *See Hood River Valley*, 193 Or App at 495 ("*Strawberry Hill 4 Wheelers* 'contemplates a balancing of the various factors which militate for or against a quasi-judicial characterization and does not create [an] "all or nothing test."'" (Citation omitted.)). "We cannot, and will not, pretend that the *Strawberry Hills 4 Wheelers* criteria are exact or that their application is certain." *Hood River Valley*, 193 Or App at 499.

Before applying the relevant criteria to the district actions challenged in this proceeding—the district's cost analyses and its related determination as to whether procurement is authorized—we start by observing that, on their face, those actions (and the process that led to them) have little in common with typical adjudicatory processes. At its core, the process is investigatory in nature, not adjudicatory. A contracting agency considering procurement for a service is charged with gathering information about the different costs associated with providing a service in-house rather than by outsourcing, in order to make an informed decision about how to proceed. Although the results of that investigatory process ultimately may limit the options available to a contracting agency as to how it can provide certain services, nothing that resembles a typical adjudication occurs.

An application of the relevant factors confirms that initial impression. We acknowledge (as defendants argue)

---

"the traits are manifestations of the fundamental, structural difference between what courts do and what legislative bodies do. Generally, courts are institutions empowered to deploy processes like evidentiary hearings and cross-examination in order disinterestedly and rationally to solve concrete disputes between parties as to whether and how particular events did or did not occur and whether they amount to transgressions of preexisting legal norms. Their decisions attain legitimacy by demonstrating a rational connection among the norms, the evidence on the record, and the outcome. Once presented with a justiciable controversy, courts are not free to ignore it; the parties cannot be told to go away because the judges would prefer to devote their energy and resources to more (or less) pressing problems. Legislative bodies, on the other hand, choose from among competing policy preferences. They are not bound to any record. They are held accountable not by the constraints of logic or rules of evidence, but by politics, and '[a] legislature is never required to make a decision.' *Estate of Gold [v. City of Portland]*, 87 Or App [45] at 54[, 740 P2d 812, *rev den*, 304 Or 405 (1987)] (Deits, J., dissenting)."

that the third *Strawberry Hill 4 Wheelers* factor (that the decision at issue was directed at a "closely circumscribed factual situation") points toward a determination that the action for which plaintiff seeks review was quasi-judicial; the district's determination that its analyses under ORS 279B.033 permitted it to move forward with procurement was directed at the "closely circumscribed factual situation" as to whether it could engage in procurement for student transportation services. However, the other criteria point in a different direction. Regarding the first factor, once the district began the process of investigating whether procurement of transportation services was authorized by preparing the cost analyses, it was not bound to reach a decision. It was not even bound to complete the estimate. Although the completion of the analysis was a necessary prerequisite to proceeding with procurement, the district remained free to abandon that information-gathering process and the inquiry into whether to pursue procurement at any time, and could have simply continued to provide student transportation services in-house rather than seeking to outsource them.

The second factor also points to the conclusion that the district was not engaged in a quasi-judicial function when it prepared the cost analyses at issue here and then determined from them that it could proceed with procurement of student transportation services. Although ORS 279B.033(1)[14] details the information that must be included

---

[14] ORS 279B.033(1) provides:

"In the cost analysis required under ORS 279B.030, a contracting agency shall:

"(a) Estimate the contracting agency's cost of performing the services, including:

"(A) Salary or wage and benefit costs for contracting agency employees who are directly involved in performing the services, including employees who inspect, supervise or monitor the performance of the services.

"(B) Material costs, including costs for space, energy, transportation, storage, raw and finished materials, equipment and supplies.

"(C) Costs incurred in planning for, training for, starting up, implementing, transporting and delivering the services and costs related to stopping and dismantling a project or operation because the contracting agency intends to procure a limited quantity of services or procure the services within a defined or limited period of time.

in a preprocurement cost-benefits analysis, the preparation of a cost analysis does not require the "application of preexisting criteria to concrete facts." *Strawberry Hill 4 Wheelers*, 287 Or at 603. Instead, as discussed further below, the preparation of a cost analysis requires an agency to collect information about the different types of costs identified in ORS 279B.033(1) and then use that information to prepare an analysis of the likely costs of procurement versus the likely costs of providing services in-house. In other words, the standards in ORS 279B.033(1) structure an information-gathering process, rather than a decision-making process. And, once that information is collected and employed to create the required analysis, the determination under ORS 279B.033(2)(a) as to whether procurement is authorized is purely ministerial, and allows for no exercise of adjudicatory discretion. If the cost analysis reflects that procurement will be more expensive than providing the services in question in-house, then procurement is not authorized. ORS 279B.033(2)(a). Or, if the cost analysis indicates that any cost savings from procurement stems solely from the fact that it is estimated that a private contractor will pay lower wages, salaries, and benefits than the contracting agency would pay its own employees, then procurement is not authorized. *Id.* Otherwise, procurement is authorized but not required.

---

"(D) Miscellaneous costs related to performing the services. The contracting agency may not include in the cost analysis the contracting agency's indirect overhead costs for existing salaries or wages and benefits for administrators or for rent, equipment, utilities and materials except to the extent that the costs are attributable solely to performing the services and would not exist unless the contracting agency performs the services.

"(b) Estimate the cost a potential contractor would incur in performing the services, including:

"(A) Average or actual salary or wage and benefit costs for contractors and employees who:

"(i) Work in the industry or business most closely involved in performing the services that the contracting agency intends to procure; and

"(ii) Would be necessary and directly involved in performing the services or who would inspect, supervise or monitor the performance of the services;

"(B) Material costs, including costs for space, energy, transportation, storage, raw and finished materials, equipment and supplies; and

"(C) Miscellaneous costs related to performing the services, including but not limited to reasonably foreseeable fluctuations in the costs for the items identified in this subsection over the expected duration of the procurement."

Finally, ORS 279B.033 imposes no procedural requirements on the preparation of a cost analysis, and the related determination as to whether the cost analysis authorizes procurement, apart from the requirement that the contracting agency maintain the analysis, supporting documentation, and any determination based on the estimate, as public records. ORS 279B.033. The absence of such procedural requirements further indicates that the process of preparing a cost analysis and determining whether the analysis authorizes procurement in not quasi-judicial. *Lane v. City of Prineville*, 49 Or App 385, 388, 619 P2d 640 (1980); see *Hood River Valley*, 498 Or App at 498-99 (presence of "a number of procedural requirements" for making determination at issue was indicative of quasi-judicial function).

In sum, we conclude that the district's preparation of the cost analyses at issue in this case, and its related determination that those analyses authorized procurement, did not involve the exercise of a quasi-judicial function. Accordingly, those actions were not subject to challenge by writ of review. *See Koch*, 306 Or at 448 (in determining that a writ of review process does not apply it is sufficient to distinguish the agency's act from acts that are quasi-judicial); *White*, 258 Or App at 142 (if it is determined that the agency's act is not quasi-judicial, it is not necessary for the court to determine what other type of action it might be). The trial court therefore had jurisdiction over this matter because, as noted above, plaintiff has sufficiently alleged a justiciable controversy under the Uniform Declaratory Judgments Act.[15]

---

[15] Although we conclude that this action for declaratory and other mandatory relief is an appropriate mechanism by which to seek the relief to which plaintiff has alleged an entitlement, we do not mean to suggest that it is the only mechanism for raising a challenge to a local government's cost analysis or related determination that a cost analysis authorized the local government to proceed with procurement. In the light of the nondiscretionary nature of the obligation to perform the cost analysis before embarking on the procurement process, and the ministerial nature of the determination whether procurement is authorized once the cost analysis is complete, depending on the circumstances, a mandamus proceeding under ORS 34.110 may also provide an avenue for review of a cost analysis and the nondiscretionary determinations predicated thereon, if all other prerequisites for mandamus relief are met. *See generally State ex rel Dewberry v. Kulongoski*, 346 Or 260, 269-74, 210 P3d 884 (2009) (discussing circumstances in which mandamus relief is available, and the relationship between declaratory relief and mandamus relief). However, even if mandamus were an available

## B. *Merits*

Turning finally to the merits, the question presented by plaintiff in her first assignment of error is whether the court erred in granting the district's motion for summary judgment and rejecting plaintiff's contention that the district violated ORS 279B.030(1)(a) by failing to correctly complete the cost analysis required by ORS 279B.033 before entering into a contract for transportation services with First Student. At the heart of plaintiff's argument is the view that the cost analyses of Robinson and Fairchild do not support the trial court's ruling on summary judgment because they were incomplete. We agree with plaintiff that, because both cost analyses omitted data that was central to the district's comparison of costs under ORS 279B.033(2)(a), the district's determination pursuant to ORS 279B.033(2)(a) that there were cost savings permitting it to proceed to procurement was "contrary to law." ORS 279B.145 (providing that determinations under ORS 279B.033 may be reviewed to determine whether they are, among other things, "contrary to law").

ORS 279B.033(1)(a)(A) provides that, "[i]n the cost analysis required under ORS 279B.030, a contracting agency shall:

"(a)   Estimate the contracting agency's cost of performing the services, including:

"(A)   Salary or wage and benefit costs for contracting agency employees who are directly involved in performing the services, including employees who inspect, supervise or monitor the performance of the services."

Additionally, under ORS 279B.033(1)(b), the cost analysis shall "[e]stimate the cost a potential contractor would incur in performing the services, including:

"(A)   Average or actual salary or wage and benefit costs for contractors and employees who:

---

remedy to plaintiff, that fact would not deprive the trial court (and us) of jurisdiction over this matter. Neither the Supreme Court nor this court has ever held that mandamus relief, if available, is an exclusive remedy. Instead, mandamus is an "extraordinary" remedy, available *only* when it is not plain that other remedies are available, or when other available remedies are *not adequate to afford the* mandamus relators "all relief to which they are entitled." *Id.* at 273.

"(i) Work in the industry or business most closely involved in performing the services that the contracting agency intends to procure; and

"(ii) Would be necessary and directly involved in performing the services or who would inspect, supervise or monitor the performance of the services[.]"

Then, under ORS 279B.033(2)(a), the contracting agency is required to compare its own costs with those of the potential contractor, and may proceed with the procurement

"only if the contracting agency would incur more cost in performing the services with the contracting agency's own personnel and resources than the contracting agency would incur in procuring the services from a contractor."

But the agency may not proceed with the procurement

"if the sole reason that the costs estimated [for the potential contractor] are lower than the costs estimated [for the contracting agency] is because the costs estimated [for the potential contractor's salary or wage and benefits] are lower than the costs estimated [for the contracting agency's salary or wage and benefits]."

ORS 279B.033(2)(a).

In plaintiff's view, neither the Robinson nor the Fairchild cost analysis satisfies the salary, wage, and benefits comparison required by ORS 279B.033(2)(a). The Robinson analysis estimated the district's personnel costs based on the district's budget for the previous academic year (2010-2011), for a total of $1,555,735 for all personnel costs related to transportation. The Robinson report then assumed the identical cost for the "potential contractor," explaining:

"The district cannot determine contractor's wage and benefit programs until RFP's have been received. We anticipate a contractor to pay a competitive wage relative to the services offered. Contractors have economies of scale for reduced health benefit costs. *Due to this lack of information we are using the assumption that the cost will be equal to that of the District.*"

(Emphasis added.) The Fairchild cost analysis similarly assumed that First Student would pay its employees the

same wages and benefits as the district. This was despite Fairchild's knowledge that First Student's wages and benefits would likely be lower than the district's.[16]

Plaintiff asserts that this method of "estimating" the potential contractor's personnel costs is not an *estimate* at all within the meaning of ORS 279B.033; rather, it is an *assumption*. Plaintiff further asserts that the district's reliance on that assumption to prepare its cost analyses renders those analyses, and the related determination that those analyses authorized procurement, contrary to ORS 279B.033 and, thus, "contrary to law." Defendants do not directly respond to that contention, except to agree with the trial court's conclusion that it was a "very conservative (and defensible) assumption" in light of the "absence of actual data," and not "so irrational as to violate the statute."[17]

We conclude, based on the text of ORS 279B.033, that the district's reliance on assumptions in preparing the cost analysis required by the statutes rendered that cost analysis "contrary to law." As noted, ORS 279B.033 describes the cost analysis that must precede a contracting agency's decision to proceed with a procurement. The contracting agency's cost analysis "shall"

"[e]stimate the cost a potential contractor would incur in performing the services, including:

"(A) Average or actual salary or wage and benefit costs for contractors and employees who:

"(i) Work in the industry or business most closely involved in performing the services that the contracting agency intends to procure[.]"

---

[16] First Student's RFP stated that "[n]ew hires will be hired at an alternate wage scale based on other local First Student operation."

[17] Citing that standard, the trial court considered plaintiff's argument relating to the comparison of personnel costs and rejected it as a basis for invalidating the cost analyses. The trial court explained:

"In this category, the School District's first cost analysis relied on the very conservative (and defensible) assumption that a private contractor's personnel costs would be the same as the School District's in the absence of actual data from either specific contractors or industry data—an assumption not so irrational as to violate the statute. The second cost analysis relied in part on statements made by First Student, a means of estimating explicitly allowed by the statute and related OARs."

ORS 279B.033(1)(b). The inclusion of an estimate of the potential contractor's personnel costs is mandatory, not optional. There are additional cost estimates that must be included in the cost analysis, but the estimate of personnel costs is especially significant, because the procurement process cannot proceed if the only cost saving is in personnel. ORS 279B.033(2)(a). The legislature emphasized that concern by specifically requiring the contracting agency to make a comparison of the estimated personnel costs of the contracting agency and the potential contractor. ORS 279B.033(2)(a) provides:

> "The contracting agency may not proceed with the procurement if the sole reason that the costs estimated in subsection (1)(b) of this section are lower than the costs estimated in subsection (1)(a) of this section is because the costs estimated in subsection (1)(b)(A) of this section are lower than the costs estimated in subsection (1)(a)(A) of this section."

The statute unambiguously requires an "estimate" of the potential contractor's personnel costs.

In *Oregon Cable Telecommunications v. Dept. of Rev.*, 237 Or App 628, 636, 240 P3d 1122 (2010), we observed that the term "estimate" encompasses "the act of appraising or valuing: VALUATION, CALCULATION; 'a judgment made from usually mathematical calculation especially from incomplete data : a rough or approximate calculation[.]'" (Quoting *Webster's Third New Int'l Dictionary* 799 (unabridged ed 2002).). That definition is apt here: The "estimates" of personnel costs required by ORS 279B.033 require the act of appraisal or valuation based on calculations based on *data*. Although data may be incomplete, resulting in calculations that are "rough or approximate," we believe that, in enacting ORS 279B.033, the legislature intended for a contracting agency to go through the process of creating an "estimate": collecting data and making calculations and appraisals based on that data.

The legislative history of ORS 279B.030 and ORS 279B.033 confirms that the legislature understood and intended for the term "estimate" in those provisions to encompass the process of collecting information and assessing costs based on that information. The proponents of the

measure frequently reiterated that the purpose of the estimate process was to collect information so that contracting agencies could make informed decisions about contracting. *See, e.g.*, Testimony, House Committee on Rules, HB 2867, Apr 20, 2009, Ex 9 (written statement of Dana Hepper on behalf of Stand for Children); Testimony, House Committee on Rules, HB 2867, May 27, 2009, Ex 15 (written statement of Melissa Unger, on behalf of Service Employees International Union, Local 503). And as to the frequently discussed question of how a contracting agency would obtain the information needed to complete the analysis, one proponent explained:

> "The bill requires that the contracting agency <u>estimates</u> the costs of wages and benefits of a possible contractor for providing the service. The agency can look to past contracts and also there is extensive information available from the Oregon Employment Department about the average salary of different jobs in different areas of the state. At their website [], an agency can search for the job title by county to get an average wage. In addition, the Employment Department does studies on average benefits.
>
> "It is critical that contracting agencies are taking the time to estimate the costs of potential contractors before they receive bids so that they can compare the different proposals from contractors to ensure that they are within reason of [] how much the service should cost."

Testimony, House Committee on Rules, HB 2867, May 27, 2009, Ex 15, pp. 4-5 (written statement of Melissa Unger, on behalf of Service Employees International Union, Local 503) (underscoring in original).

The district's decision to base its cost estimate for the potential contractor on an *assumption* circumvented the process intended by the legislature in ORS 279B.033. Because the district relied on assumptions about salary, wage, and benefit costs, and did not include estimates of actual salary, wage, and benefit costs for potential contractors as required by ORS 279B.033(1)(b), its cost analysis did not comply with the statute.[18] The trial court therefore

---

[18] In light of our reversal of the trial court's judgment based on our conclusion that the district's cost analysis was contrary to law because it did not include the

erred when it granted summary judgment to defendant on the ground that the undisputed facts demonstrated that the cost analyses complied with ORS 279B.033.

## IV. CONCLUSION

The district's cost analyses were "contrary to law." The trial court erred in concluding otherwise. The general judgment of dismissal is reversed and remanded for further proceedings consistent with this opinion.[19]

Reversed and remanded.

---

required comparison of personnel cost estimates, we do not address plaintiff's other contentions.

[19] We note that because the trial court granted summary judgment to defendants based on its conclusion that the district's cost analysis complied with statutory requirements, it does not appear to have addressed the district's alternative ground for summary judgment: that plaintiff's action was barred by laches.