Argued and submitted February 27, affirmed May 12, 2004

Robert E. BABCOCK
and Gail R. O'Connell-Babcock,
individually and as Guardians for
Elizabeth E. Babcock and Robert L. Babcock,
*Appellants,*

*v.*

SHERWOOD SCHOOL DISTRICT 88J;
Rob Saxton, District Superintendent;
Wayne Lowry; Peggy Stevens; Dave Backen;
Mark Christie; and Judi Ebmeyer,
District Board of Directors,
*Respondents.*

C023059CV; A121549

90 P3d 1036

Robert E. Babcock argued the cause and filed the briefs for appellants.

Richard G. Cohn-Lee argued the cause for respondents. With him on the brief was The Hungerford Law Firm.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Schuman, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiffs live within Sherwood School District 88J and requested an interdistrict transfer that would allow their children to attend schools in the Riverdale district without paying tuition. Defendants are the Sherwood district and its officials who denied the request. We are called on to decide whether the trial court erred in dismissing plaintiffs' petition for a writ of review of that denial. Because the court granted defendants' motion to dismiss, we take the facts from plaintiffs' complaint, accepting them as true and giving plaintiffs the benefit of all favorable factual inferences. *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999). We affirm.

Under Oregon law, a student in one public school district may transfer to a school in another district, and, if both districts agree, then the "sending" district pays the student's expenses incurred by the "receiving" district. ORS 339.125(1). In the absence of an agreement, however, the student's expenses must be paid by the student's parents. The present dispute began when plaintiffs wrote defendants a letter on August 21, 2002, requesting a tuition-free interdistrict transfer. At the time, the children were already attending school in the Riverdale district but plaintiffs were paying approximately $17,000 per year in tuition. Shortly after receiving plaintiffs' letter, defendant Saxton, the Sherwood district's superintendent, telephoned plaintiffs and told them that the district was denying their request. He did not provide any reason for the decision.

In response, on August 31, 2002, plaintiffs wrote Saxton another letter complaining about the denial and, more emphatically, about the process that led to it. They accused the superintendent of acting arbitrarily, informed him that they planned to appeal the denial to the district's board of directors, and argued that the board was obligated to afford them a hearing, complete with witnesses, discovery of documentary evidence, and other attributes of a quasi-judicial process. In his reply, the superintendent asserted that "the District has the authority to set whatever process it decides upon—or no process whatsoever—in responding to

interdistrict transfer requests, so long as the District's process is not discriminatory or otherwise in violation of state or federal law." The superintendent also told plaintiffs that "no hearing will be scheduled," but that plaintiffs had "the right to speak to the Board" during "public comment" time at the board's next scheduled public meeting. "[F]urther," the superintendent told plaintiffs,

> "no documents, witnesses, or any other type of evidence may be presented. If you wish to speak during public comment, you need simply show up at the Board meeting and sign in on the public comment roster.
>
> "As you have indicated that you have information from various individuals that you would like considered, I am willing to accept written information from you and reconsider my determination based on such information. * * * Please submit all written documentation to my office. I will inform you in writing by within 7 days of my decision on reconsideration upon receipt of such documents. If you continue to be dissatisfied with my decision, you may speak during public comments, as outlined above, but have no right to a hearing before the Board."

Nothing in the record indicates that plaintiffs sent any documents to the superintendent or that he provided a written opinion on reconsideration. In any event, plaintiffs attended the board's public meeting on September 10, 2002, and apparently presented their arguments; the record, again, contains nothing indicating the contents of their presentation. It does contain a letter from the superintendent to plaintiffs that says, in part:

> "I am sending you this communication following the Sherwood School District Board meeting of September 10th in which you addressed the Sherwood School Board during Public Comment.
>
> "I spoke with individual members of the Board following the meeting in case they might indicate a change of direction concerning Inter-district Transfer Requests. I also conferred specifically with our Board Chair, Wayne Lowry.
>
> "Mr. Lowry and the Board believe that the Sherwood School District offers the programs that would allow your children to have a successful school experience. In addition

they intend to maintain consistency with other Interdistrict Transfer Requests of this nature. Therefore, your request continues to be denied."

Plaintiffs filed a timely petition for a writ of review in Washington County Circuit Court. Defendants, in response, moved for dismissal, arguing that the circuit court did not have jurisdiction because a writ of review is available only to appeal a decision resulting from an "exercise of judicial or quasi-judicial functions," ORS 34.040; according to defendants, the board's decision was not quasi-judicial. Defendants also argued that, on the merits, plaintiffs' petition did not state a claim. The court granted defendants' motion without indicating whether it did so on jurisdictional grounds or on the merits. This appeal ensued.

The jurisdictional issue, which we find dispositive, reduces to one question: Was the district's decision to deny plaintiffs' request for a tuition-free interdistrict transfer the exercise of a quasi-judicial function? In *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979), the Supreme Court defined quasi-judicial (or "adjudicative") functions as those operations of government that meet three criteria: They "[g]enerally" employ a "process [that] is bound to result in a decision," the "decision is bound to apply preexisting criteria to concrete facts," and the decision is "directed at a closely circumscribed factual situation or a relatively small number of persons." *Id.* at 602-03.

That formulation was never intended to serve as a complete, all-purpose list of "elements," all of which must be present in order to label an action quasi-adjudication, as the introductory word "generally" indicates. *See Estate of Gold v. City of Portland*, 87 Or App 45, 51, 740 P2d 812, *rev den*, 304 Or 405 (1987) (*Strawberry Hill 4 Wheelers* does not create an "all or nothing" test). Rather, the traits are manifestations of the fundamental, structural difference between what courts do and what legislative bodies do. Generally, courts are institutions empowered to deploy processes like evidentiary hearings and cross-examination in order disinterestedly and rationally to solve concrete disputes between parties as to whether and how particular events did or did not occur and whether they amount to transgressions of preexisting legal

norms. Their decisions attain legitimacy by demonstrating a rational connection among the norms, the evidence on the record, and the outcome. Once presented with a justiciable controversy, courts are not free to ignore it; the parties cannot be told to go away because the judges would prefer to devote their energy and resources to more (or less) pressing problems. Legislative bodies, on the other hand, choose from among competing policy preferences. They are not bound to any record. They are held accountable not by the constraints of logic or rules of evidence, but by politics, and "[a] legislature is never required to make a decision." *Estate of Gold*, 87 Or App at 54 (Deits, J., dissenting).

Under these precepts, defendants did not engage in a quasi-adjudicative process, despite the fact that their decision applied only to the particular situation of two individuals. Plaintiffs acknowledge that defendants "have no written rules or regulations pertaining to inter-district transfer requests," but they assert nonetheless that defendants' "unwritten 'general rule' is to (a) approve requests submitted on behalf of older children new to the district and (b) deny requests submitted on behalf of younger children equally new to the district." Liberally read, the petition for writ of review also alleges that defendants will deny a request when defendants' district "offers the programs that would allow * * * children to have a successful school experience." Thus, according to plaintiffs, defendant made their decision based on preexisting criteria.

However, as we have held, general factors such as those named by plaintiffs—factors that the governing body is not "bound to apply"—are not preexisting criteria that significantly limit the board's discretion and thereby create a quasi-adjudication. In *McGowan v. Lane County Local Govt. Bdry. Comm.*, 102 Or App 381, 385, 795 P2d 560, *rev den*, 310 Or 612 (1990), we held that the following criteria did not convert a process into a quasi-adjudication:

"[A] boundary commission shall consider local comprehensive planning for the area, economic, demographic and sociological trends and projections pertinent to the proposal, past and prospective physical development of land that would directly or indirectly be affected by the proposed

boundary change or application under ORS 199.464 and the goals adopted under ORS 197.225."

To the extent that plaintiffs allege a specific criterion—the age of the student applicant—that is not the kind of fact determination that calls for the truth-finding mechanisms of an adjudicatory process.

Further, although the board responded to plaintiffs' request after holding an event that might be called a "hearing," the fact remains that the board was not *required* to deal with plaintiffs' request—it could simply have ignored it—and the hearing that occurred had none of the characteristics associated with quasi-adjudication. *See Sergeant's Towing, Inc. v. City of Portland*, 173 Or App 359, 364, 22 P3d 237, *rev den*, 332 Or 558 (2001) (determinative fact is not whether mayor responded to request but whether she was under "legal obligation to respond to it"). Plaintiffs themselves assert that they had no opportunity to call witnesses, present testimony, or "examine participants in the decision-making process"; that the board made its decision based on "an unwritten and undisclosed process devoid of demonstrated permissible and consistently applied criteria"; and that the ultimate decision made no attempt rationally to link the outcome to the facts. Plaintiffs cannot convert an open, public business meeting of a governing body into a quasi-adjudication by presenting an argument in favor of receiving some benefit during the time set aside for public input. They cannot, in other words, unilaterally convert a quasi-legislative hearing into a quasi-judicial one by making a rational argument and hoping for a favorable outcome.

In short, in failing to grant plaintiffs' request for an interdistrict transfer, defendants exercised their discretion and made what amounted to a policy choice, albeit one directly affecting only two people. The board did not engage in quasi-adjudication. In fact, the point of plaintiffs' argument appears to be that the board *should* have engaged in quasi-adjudication, but did not. To make that argument is to concede that the process was not quasi-adjudicative. The proper vehicle for challenging the board's alleged failure to provide plaintiffs with a quasi-adjudication cannot be a writ of review, the predicate to which is . . . a quasi-adjudication.

The writ lies where a tribunal "in the exercise of judicial or quasi-judicial functions appears to have" erred. ORS 34.040. That did not happen here.[1]

Affirmed.

---

[1] Plaintiffs do not argue that they have a valid claim under Article I, section 20, of the Oregon Constitution, which guarantees that privileges and immunities are made available to all people equally, and we do not decide that issue. *See City of Salem v. Bruner,* 299 Or 262, 268-69, 702 P2d 70 (1985) ("Whenever a person is denied some advantage to which he or she would be entitled but for a choice made by a government authority, Article I, section 20, requires that the government decision to offer or deny the advantage be made 'by permissible criteria consistently applied'.").