Submitted September 8, 2020, affirmed March 31, 2021

Cody LANE,
*Petitioner-Appellant,*

*v.*

MARION COUNTY
DISTRICT ATTORNEY'S OFFICE;
and Paige Clarkson,
in her official capacity as
District Attorney for Marion County,
*Respondents-Respondents.*

Marion County Circuit Court
19CV08735; A171380

486 P3d 38

Petitioner appeals a judgment dismissing his petition for a writ of review. On appeal, he argues that the trial court erred when it determined that respondents' decision not to remove petitioner from the Marion County District Attorney's Office's "*Brady* list" was not subject to challenge via a writ of review. He contends that that decision was subject to challenge via a writ of review because it was a quasi-judicial decision. *Held*: The trial court did not err. Respondents' decision not to remove petitioner from the Marion County District Attorney's Office's *Brady* list did not involve the exercise of a quasi-judicial function. It was, instead, the sort of discretionary process and decision that is not subject to challenge via a writ of review.

Affirmed.

Matthew J. Donohue, Judge.

Daniel Thenell, Emerson Lenon, and Thenell Law Group P.C. filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondents.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Affirmed.

**TOOKEY, J.**

Petitioner in this writ of review proceeding is a public safety officer employed by the Marion County Sheriff's Office (MCSO). The Marion County District Attorney's Office (MCDAO) notified petitioner that it would not call petitioner as a witness in any future proceedings it instituted because it believed that "circumstances surrounding" petitioner and certain conduct petitioner had engaged in triggered the MCDAO's discovery obligations under *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and because petitioner could not "withstand the strict scrutiny required of law enforcement witnesses in criminal prosecutions." Petitioner was put on what petitioner and the MCDAO refer to as its "*Brady* list."[1]

Petitioner sought his removal from the MCDAO's *Brady* list, and after the MCDAO and the Marion County District Attorney did not remove petitioner from the MCDAO's *Brady* list, he filed a petition for a writ of review naming the MCDAO and the Marion County District Attorney as respondents. The petition contended, in relevant part, that the "failure to remove Petitioner from the *Brady* list was in error" and seeking to have "the [Marion County] District Attorney immediately remove Petitioner from the *Brady* list." The trial court dismissed the petition

---

[1] "*Brady* lists"—also known as "*Giglio* lists, liars lists, asterisk lists, potential impeachment disclosure databases, and law enforcement integrity databases"—are a "mechanism by which prosecutors within an office alert each other to an officer's credibility problems." Jonathan Abel, *Brady's Blind Spot: Impeachment Evidence in Police Personnel Files and the Battle Splitting the Prosecution Team*, 67 Stan L Rev 743, 780 (2015).

Under *Brady*, "a prosecutor's withholding of favorable evidence from a criminal defendant violates due process where the evidence is material either to guilt or to punishment." *Tiner v. Premo*, 284 Or App 59, 70, 391 P3d 816, *rev den*, 361 Or 886 (2017) (internal quotation marks omitted). "That duty to disclose [favorable evidence] applies to impeachment evidence as well as exculpatory evidence." *Id.*; *see Giglio v. United States*, 405 US 150, 92 S Ct 763, 31 L Ed 2d 104 (1972) (extending *Brady* to encompass material affecting the credibility of a state witness).

"Strictly speaking, placement on [a] *Brady* list does not bar an officer from testifying," Abel, 67 Stan L Rev at 780, although, with respect to petitioner, the MCDAO indicated to petitioner that it would not call petitioner as a witness in any future proceeding.

On appeal, petitioner also uses the term "*Brady* index" to describe the "list" or "index" that the MCDAO placed him on. For consistency, throughout this opinion, we use the phrase "*Brady* list."

for a writ of review and quashed the writ after determining, in relevant part, that respondents' decision not to remove petitioner from the MCDAO's *Brady* list was not subject to challenge via a writ of review. On appeal, petitioner challenges that ruling.

We conclude that respondents' decision not to remove petitioner from the MCDAO's *Brady* list is not subject to challenge via a writ of review. Consequently, we affirm.

## I.   FACTS & PROCEDURAL HISTORY

For purposes of our analysis, the relevant facts are undisputed. The night of November 24, 2017, petitioner was on patrol working an overnight shift. Sometime in the early morning hours of November 25, 2017, petitioner's girlfriend, who was at a bar celebrating her birthday, contacted him, and she asked him to follow her home. He did so.

Another bar patron saw petitioner arrive and follow petitioner's girlfriend in his patrol vehicle. That patron thought something did not appear right about the situation and contacted the MCSO regarding what he had observed.

The MCSO conducted an internal investigation regarding petitioner's conduct, which ultimately resulted in the MCSO terminating petitioner's employment on April 9, 2018. Petitioner's termination letter reflects that the MCSO had determined that petitioner "engaged in behavior on the early morning hours of November 25, 2017 that brings into question [petitioner's] integrity and honesty." It also states that the internal investigation found that petitioner "'purposefully' meant to *deceive or hide* the fact that [petitioner was] 'escorting' [his] girlfriend home from a bar."[2] (Emphasis in original.)

---

[2] In its briefing, respondents state that the internal investigation into petitioner's conduct began after the MCSO received a report that petitioner, "while on duty and driving his patrol vehicle, followed his intoxicated girlfriend home from a bar to help her avoid being stopped by the local police department." Petitioner maintains that his girlfriend asked him to follow her home because she had a malfunctioning headlight, and that his girlfriend's home was not "out of his way."

We note that, given the analysis that we undertake in determining whether respondents' decision not to remove petitioner from the MCDAO's *Brady* list is subject to challenge via a writ of review, it is immaterial why petitioner followed

        The MCDAO received information concerning petitioner and his termination, and petitioner sent the MCDAO correspondence in which he disputed any allegations of dishonesty. Additionally, petitioner filed a grievance against the MCSO through his union. That grievance resulted in an arbitration proceeding involving the MSCO and petitioner's union. The MCDAO was not a party to that arbitration proceeding.

        On August 29, 2018, petitioner's counsel received a letter from the MCDAO, which stated:

> "Our office has completed our assessment of the circumstances surrounding your client [petitioner] and his termination from the Marion County Sheriff's Office. Based on that review we have significant concerns about your client's conduct on November 24-25, 2017, his veracity during the event itself, as well as his veracity during the subsequent investigation. We have also received and considered your July 27, 2018, letter to our office disputing any allegations of dishonesty.

> "Considering all these factors, we have concluded that [petitioner's] conduct triggers our discovery obligations under *Brady v. Maryland*, and we believe that your client cannot withstand the strict scrutiny required of law enforcement witnesses in criminal prosecutions. Furthermore, we believe that our obligations under *Brady v. Maryland* are independent from any employment grievance or lawsuit. Therefore, we do not feel that we are able to wait until the conclusion of his arbitration regarding the Sheriff's decision to terminate your client's employment.

> "Therefore, [petitioner] will not be called as a witness in any future proceedings by our office."

        On January 7, 2019, the arbitrator in the arbitration between petitioner's union and the MCSO issued a "decision and award" regarding petitioner's grievance. The arbitrator found flaws in the investigation conducted by the MCSO, determined that the MCSO did not have just cause to terminate petitioner, and ordered that the MCSO reinstate petitioner to the position he held prior to his termination.

---

his girlfriend home, whether such conduct was appropriate, and whether petitioner was purposefully deceptive during the MCSO's internal investigation.

The decision and award also included the following order and determinations:

> "The MCSO is ordered to inform the [MCDAO] of your Arbitrator's findings and conclusions as set forth in this decision and award and request that the [petitioner] be removed from the *Brady* list. The [petitioner] is not a '*Brady* Cop.' The MCSO may, if necessary to have the [petitioner] removed from the *Brady* list, provide a copy of this decision and award to the [MCDAO] to justify the request by the MCSO. Your Arbitrator is confident that the [petitioner], once reinstated, shall continue to serve the MCSO with integrity, honor, honesty, and trustworthiness. If your Arbitrator did not believe that the [petitioner] would serve in this capacity, the [petitioner] would not have been reinstated."

On January 10, 2019, the Marion County Sherriff and counsel for Marion County met with the Marion County District Attorney and informed her of the decision and award. The Marion County District Attorney stated that she had conducted a "full review" of petitioner's conduct and she "declined" to remove petitioner from the *Brady* list.[3]

On February 26, 2019, petitioner filed a petition seeking a writ of review. The trial court ordered the clerk of the court to issue the writ. The petition named the MCDAO and the District Attorney of Marion County, in her official capacity, as respondents. In the petition, petitioner asserted that respondents' "failure to remove [p]etitioner from the *Brady* list was in error." Petitioner sought, among other relief, to have "the District Attorney immediately remove Petitioner from the *Brady* list."

Petitioner attached to the petition as an exhibit a document titled "Best Practices for Navigating *Brady v. Maryland* in Oregon," which, according to petitioner, was the product of a "Statewide Protocol Workgroup" convened by the Department of Public Safety Standards and Training to "develop consistent statewide practices for Oregon's public

---

[3] The petition for a writ of review attaches a February 14, 2019, email from counsel for Marion County to the arbitrator regarding what transpired during the January 10, 2019, meeting between the Marion County District Attorney, counsel for Marion County, and the Marion County Sheriff. Petitioner relies on that email in his petition, and our understanding of what transpired during the January 10, 2019, meeting is informed by that email.

safety communities." The petition alleged that respondents "failed to follow" and "implement" the "Best Practices."

Respondents then filed a motion to dismiss the petition and quash the writ. Respondents argued that, under ORS 34.010, in a writ of review proceeding, the "court can only review decisions of officers exercising judicial or quasi-judicial functions" and that "district attorneys prosecuting cases are not making 'judicial or quasi-judicial decisions.'" Petitioner responded that he was "not seeking a review of a case by case evaluation or contesting the duty to disclose under *Brady*," but rather "seeking limited review of the [r]espondents' decision to categorically bar him from testifying." Petitioner explained that, in his view, the "decision to bar [him] from testifying is a judicial or quasi-judicial decision" subject to review via a writ of review.

The trial court granted defendant's motion to dismiss and quash the writ. As relevant here, the trial court noted that the "sum total" of what petitioner sought to have reviewed "is a decision by the district attorney's office not to reverse their August 29th decision" to place petitioner on the *Brady* list. The trial court determined that "any such re-consideration by the District Attorney was purely discretionary on the District Attorney's part and not a justiciable question." About the "Best Practices" petitioner pointed to in his petition, the trial court noted that there had been nothing presented to the trial court "regarding any rule or policy decisions from the Marion County District Attorney's Office indicating that those [Best Practices] were adopted as some sort of * * * review requirement" by the MCDAO.

The court concluded that it had "no jurisdiction to review the decision at issue."[4]

---

[4] The trial court also determined that, to the extent that petitioner was challenging the MCDAO's August 29 decision to put petitioner on the MCDAO's *Brady* list, petitioner's challenge was untimely because petitioner had "60 days to seek review * * * but failed to timely do so."

On appeal, petitioner's first question presented is whether the trial court erred in ruling that "the Writ of Review was not timely filed because it was filed more than sixty days from the initial decision to add petitioner to the Brady Index on August 29." Petitioner's briefing, however, focuses on the "second determination made by respondents"—*i.e.*, the decision not to remove petitioner from the *Brady* list—not on the MCDAO's August 29 decision to put petitioner on the MCDAO's *Brady* list. Indeed, petitioner does not develop any argument on appeal

## II.   ANALYSIS

Whether respondents' decision not to remove petitioner from the MCDAO's *Brady* list is "subject to review by writ of review under ORS 34.010 to 34.102 * * * presents a question of law," which we review for legal error. *Hicks v. Central Point School Dist.*, 270 Or App 532, 539-40, 348 P3d 307, *rev den*, 357 Or 743 (2015).

"The writ of review process is a codification of the common-law writ of *certiorari*," *Dodds v. City of West Linn*, 222 Or App 129, 132, 193 P3d 24 (2008) (citing ORS 34.010), which was first codified by the Oregon Legislature in 1862, *see* General Laws of Oregon, Civ Code, ch VII, title I, §§ 572-81, pp 294-96 (Deady 1845-1864). It is a "unique proceeding designed to review the decision of an inferior tribunal alleged to have either exceeded its jurisdiction, failed to follow applicable procedures or law, or made a finding not supported by substantial evidence." *Dodds*, 222 Or App at 132 (internal quotation marks omitted). As explained by the Supreme Court:

> "The writ of review is an economical, expeditious and procedurally simple remedy which allows the reviewing court to examine the record made in the proceeding below. It has the beneficial effect of limiting the scope of review to those matters which were brought to the attention of the lower tribunal and passed upon by that body."

*Brooks v. Dierker*, 275 Or 619, 625, 552 P2d 533 (1976).

ORS 34.040(1) provides that

> "[t]he writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an

---

as to how the trial court erred in ruling that his challenge to the MCDAO's August 29 decision to put petitioner on the MCDAO's *Brady* list was untimely. Therefore, to the extent that, on appeal, petitioner contends that the trial court erred when it determined that a challenge to the MCDAO's August 29 decision to put petitioner on the MCDAO's *Brady* list was untimely, that contention is insufficiently developed for us to address it. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) (it is not "our proper function to make or develop a party's argument when that party has not endeavored to do so itself").

Consequently, this opinion addresses whether the "second determination made by respondents"—*i.e.*, the decision not to remove petitioner from the *Brady* list—is subject to challenge via a writ of review. It does not address whether the MCDAO's August 29 decision to put petitioner on the *Brady* list would have been subject to challenge via a writ of review.

inferior court including an officer or tribunal other than an agency as defined in ORS 183.310 (1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a)　Exceeded its jurisdiction;

"(b)　Failed to follow the procedure applicable to the matter before it;

"(c)　Made a finding or order not supported by substantial evidence in the whole record;

"(d)　Improperly construed the applicable law; or

"(e)　Rendered a decision that is unconstitutional."

Thus, as indicated by ORS 34.010, "there are statutory limits on writ of review proceedings." *Dodds*, 222 Or App at 132 (internal quotation marks omitted).

One such limit, which is "subject matter jurisdictional," is that, as indicated above, only "limited types of decisions—judicial or quasi-judicial decisions—are subject to the review authority of the courts on writ of review." *Id.* That is, a writ of review "is available only to review governmental decisions made through 'the exercise of judicial or quasi-judicial functions.'" *Hicks*, 270 Or App at 544 (quoting ORS 34.040; brackets omitted). "'A judicial or quasi-judicial function is one that involves or requires an adjudicatory process.'" *Id.* (quoting *Koch v. City of Portland*, 306 Or 444, 448, 760 P2d 252 (1988)). Thus, the writ of review is, in essence, a vehicle for obtaining judicial review of the actions of local governments that involve or require an adjudicatory process. *See Brooks*, 275 Or at 623 (noting that the writ of review is "the normal vehicle for obtaining judicial review of the judicial and quasi-judicial actions of local governments").

In *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979), the Supreme Court identified three criteria to "guide the determination of whether a decision-making process was quasi-judicial"— *viz.*, "(1) Was the process, once begun, bound to result in a decision? (2) Was the decision-maker bound to apply preexisting criteria to concrete facts? (3) Was the decision directed at a closely circumscribed factual situation or a relatively small number of persons?" *Hicks*, 270 Or App at

544 (citing *Strawberry Hill 4 Wheelers*, 287 Or at 602-03); *see Dodds*, 222 Or App at 133 (noting that, in *Strawberry Hill 4 Wheelers*, "the Supreme Court explained that quasi-judicial decisions subject to writ of review are those processes that meet three criteria"). Those three criteria are "not 'elements' of a quasi-judicial function; instead, they are characteristics that might indicate that a disputed action or decision-making process was judicial or quasi-judicial, as opposed to ministerial or legislative." *Hicks*, 270 Or App at 544. Additionally, we have observed "that the existence and nature of the procedural requirements governing the determination at issue also inform the determination of whether a process is quasi-judicial." *Id.*

Because the test articulated by the court in *Strawberry Hill 4 Wheelers* "identifies the qualities necessary for a quasi-judicial act, [the test] is sufficient to distinguish a quasi-judicial act from any other type of act." *Koch*, 306 Or at 448. Accordingly, once a court determines that a particular governmental action is not subject to challenge via a writ of review because such action was not judicial or quasi-judicial, the court need not determine what type of action it might be. *See Hicks*, 270 Or App at 548 (citing *White v. Vogt*, 258 Or App 130, 142, 308 P3d 356 (2013)).

On appeal, petitioner points to what he characterizes as respondents' determination that "petitioner should remain on the [*Brady*] list" and contends that that determination "meets all three of the *Strawberry Hill* [*4 Wheelers*] criteria." Therefore, according to petitioner, that determination was "quasi-judicial" and subject to review via a writ of review proceeding. Respondents maintain that, with regard to respondents' decision to keep petitioner on the MCDAO's *Brady* list, application of the factors articulated in *Strawberry Hill 4 Wheelers* leads to the conclusion that the trial court "lacked jurisdiction to preside over the writ of review proceeding."[5]

---

[5] Respondents also argue that petitioner lacks statutory standing under ORS 34.020 "because petitioner failed to allege facts in his petition demonstrating that he participated in the MCDAO proceeding that led to its *Brady* decision or that he was entitled to do so but failed to participate for lack of notice or other reasons beyond his control." Because we conclude that respondents' decision not

To provide context for our analysis, before we apply the *Strawberry Hill 4 Wheelers* criteria to respondents' decision not to remove petitioner from the MCDAO's *Brady* list, we first make a few observations regarding the role of district attorneys and *Brady* lists.

A district attorney's "power is not wholly ministerial, but instead requires the exercise of discretion in 'how and who[m] to prosecute or sue in the name of the state.'" *State v. Goacher*, 303 Or App 783, 786, 466 P3d 1047 (2020) (quoting *Watts v. Gerking et al.*, 111 Or 641, 657, 228 P 135 (1924)). In making such determinations, it is "as much the duty of prosecuting attorneys to see that a person on trial is not deprived of any of his statutory or constitutional rights as it is to prosecute him for the crime with which he may be charged." *State v. Osborne*, 54 Or 289, 296, 103 P 62 (1909).

Concomitant with their duty to see that a person on trial is not deprived of any constitutional or statutory rights, prosecutors have myriad disclosure obligations which are imposed not only by the United States Constitution under *Brady* and its progeny, but also imposed by, *inter alia*, statute, *e.g.*, ORS 135.815(1) (requiring the district attorney disclose to "a represented defendant" any "material or information within the possession or control of the district attorney" that tends to "[e]xculpate the defendant," "[n]egate or mitigate the defendant's guilt or punishment," or "[i]mpeach a person the district attorney intends to call as a witness at the trial"), and applicable Rules of Professional Conduct (RPC), *e.g.*, RPC 3.8 (the "prosecutor in a criminal case shall *** make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense").

In fulfilling their obligations and exercising their discretion, prosecutors are understood to have the authority to decide that, even though the United States Constitution, as interpreted through *Brady* and its progeny, does not impose disclosure requirements with regard to a particular law-enforcement witness, the particular law-enforcement witness should, nevertheless, not be called as a witness by

---

to remove petitioner from the MCDAO's *Brady* list is not reviewable by way of a writ of review we do not address respondents' statutory standing argument.

the state in criminal proceedings. That understanding is consistent with the "Best Practices" document on which petitioner relies, which takes the view that district attorneys maintain the

> "discretion and authority to disqualify a professional witness from testimony based upon a lack of confidence that the witness can withstand the strict scrutiny necessary for law enforcement professionals. While these witnesses may not require *Brady* disclosure under the law, the DA may decide that their background, criminal behavior or reputation is such that they cannot be called by the State."

Statewide Protocol Workgroup, *Best Practices for Navigating* Brady v. Maryland *in Oregon* (Mar 2014), https://olis.leg. state.or.us/liz/2015r1/Downloads/CommitteeMeeting Document/62043 (accessed Mar 4, 2021).

We note that several courts have determined that a prosecutor's decision to place an officer on a *Brady* list is entitled to absolute immunity from civil liability under 42 USC section 1983, because the decision is, at bottom, a "prosecutorial function." *Pendell v. Spokane Cty., Wash.*, No 2:19-CV-00426-SAB, 2020 WL 3270150 at *1, *3 (ED Wash June 17, 2020), *appeal dismissed sub nom Pendell v. Spokane Cty.*, No 20-35617, 2020 WL 6038330 (9th Cir Sept 15, 2020) (noting "[s]everal courts have considered the specific question before the Court and have held that the decision to place an officer on" a "Potential Impeachment Disclosure List," colloquially "known as the '*Brady* list,'" is "a prosecutorial function entitled to absolute immunity"); *see, e.g.*, *Harris v. Chelan Cty. Sheriff's Dep't*, No 2:17-CV-0137-JTR, 2019 WL 1923924 at *4 (ED Wash Apr 30, 2019) ("[E]valuating a witness's credibility, determining what constitutes '*Brady* material,' and decisions on whether to use a police officer as a witness are prosecutorial functions"); *Nazir v. Cty. of Los Angeles*, No CV 10-06546 SVW (AGRx), 2011 WL 819081 at *8 (CD Cal Mar 2, 2011) (determining "what constitutes '*Brady* Material,' and decisions on whether to use a police officer as a witness in the future, are prosecutorial functions").

In fulfilling that prosecutorial function, we understand prosecutors to consider not only their constitutional

and ethical obligations but also whether they, "in good conscience," could obtain a conviction using that officer's testimony. *See Roe v. City & Cty. of San Francisco*, 109 F3d 578, 584 (9th Cir 1997) ("Prosecutors allege that [a particular officer] is not a credible witness. They do not believe they can prosecute his cases without corroborating evidence in good conscience or with a reasonable expectation of winning a conviction.").

We also observe that there are no evident procedural requirements imposed on prosecutors in Oregon in deciding whether a particular witness should be removed from a *Brady* list. In contending otherwise, on appeal, petitioner points to the "Best Practices" document he attached to his petition and argues that prosecutors "should follow" those practices when making *Brady* determinations. But petitioner acknowledges that those "Best Practices" do not "carry the force of law." Further, as the trial court indicated, petitioner's petition does not allege that those "Best Practices" have been adopted as required policies or procedures by the MCDAO.[6]

The absence of such procedural requirements for determining whether an officer should be removed from the MCDAO's *Brady* list and called as a witness in future proceedings, in our view, suggests that respondents' decision not

---

[6] Notwithstanding that it is not alleged in his petition and that it was not a position that he took in the trial court, in his briefing on appeal, petitioner argues that the "Best Practices" document reflects procedural requirements that the MCDAO "internally imposed" in making its *Brady* list determinations. But the "Best Practices" document petitioner points to does not purport to create binding procedural mechanisms that district attorneys' offices must follow; it, instead, provides a "menu of best practices," and states that "[d]ifferent county jurisdictions may choose to meet these benchmarks using individualized procedure." Thus, we do not understand that document to reflect procedural requirements that the MCDAO was required to follow.

Petitioner also points to an excerpt from a deposition taken in a different case, which he attached to a declaration in the trial court, that he contends reflects that one process employed by the MCDAO is "the submission of certain cases to a designated *Brady* judge." That deposition excerpt—even if it established the fact petitioner cites it for, which it does not—was, according to the judgment on appeal, "not considered" by the trial court because it was submitted late and was therefore "not available for review by the Court." We note, however, that consideration of that excerpt would not change our disposition in this case, as it does not reflect any procedural requirement respondents must follow in determining whether to remove a particular officer from the MCDAO's *Brady* list.

to remove a petitioner from the MCDAO's *Brady* list is not the exercise of a quasi-judicial function. *Compare Hicks*, 270 Or App at 548 (noting the absence of "procedural requirements further indicates that the process of preparing a cost analysis and determining whether the analysis authorizes procurement in not quasi-judicial"), *with Hood River Valley v. Board of Cty. Commissioners*, 193 Or App 485, 498, 91 P3d 748 (2004) (holding the presence of "a number of procedural requirements" for making determination at issue was indicative of quasi-judicial function).

With that context in mind, we turn to the three factors identified by the Supreme Court in *Strawberry Hill 4 Wheelers*.

As noted above, the first factor identified in *Strawberry Hill 4 Wheelers* is whether the process, once begun, was bound to result in a decision. Petitioner contends that this factor points toward a conclusion that the decision not to remove him from the MCDAO's *Brady* list was quasi-judicial because the "process" employed by the MCDAO is bound to result in a decision insofar as "[e]ither a potential witness is included on the 'DO NOT CALL' list or they [are] excluded from the list."

We disagree with petitioner. In our view, the first *Strawberry Hill 4 Wheelers* factor militates against a determination that respondents' decision not to remove petitioner from the MCDAO's *Brady* list was quasi-judicial. In *Babcock v. Sherwood School District 88J*, 193 Or App 449, 90 P3d 1036, *rev den*, 337 Or 556 (2004), we explained some of the differences between courts and legislative bodies:

> "Once presented with a justiciable controversy, courts are not free to ignore it; the parties cannot be told to go away because the judges would prefer to devote their energy and resources to more (or less) pressing problems. Legislative bodies, on the other hand, choose from among competing policy preferences. They are not bound to any record. They are held accountable not by the constraints of logic or rules of evidence, but by politics, and a legislature is never required to make a decision."

*Id*. at 454 (internal quotation marks omitted).

Here, a prosecutor, prior to using petitioner as a witness, would have had an obligation to make a determination about whether *Brady* and its progeny triggered the prosecutor's constitutional disclosure obligations. However, in this case, after respondents decided that petitioner could not "withstand the strict scrutiny required of law enforcement witnesses in criminal prosecutions" and that they would not utilize him as a witness in future proceedings, respondents were under no obligation to reconsider that decision, even after petitioner requested that they do so. Nor, even after respondents undertook to reconsider whether petitioner should be used as a witness in the future by the MCDAO, were they actually bound to reach a decision as to the merits—that is, reach a decision as to whether they were incorrect when they determined that petitioner was unable to "withstand the strict scrutiny required of law enforcement witnesses in criminal prosecutions." To the contrary, even after beginning reconsideration of their decision not to use petitioner as a witness, respondents could have simply abandoned such effort, in favor of other tasks.

Because respondents had no obligation to reconsider their decision to place petitioner on the MCDAO's *Brady* list, and because even after undertaking to reconsider such decision they could have simply abandoned that effort in favor of other tasks, this factor militates against a determination that respondents' decision not to remove petitioner from the MCDAO's *Brady* list was quasi-judicial. *See Dodds*, 222 Or App at 131, 134-35 (city council removing an "open space" designation from a particular piece of property was not quasi-judicial in nature, in part because the "city was not compelled to undertake a reconsideration of the property's designation [as open space], and, once it undertook to do so, it was not bound to reach a decision"); *Sergeant's Towing, Inc. v. City of Portland*, 173 Or App 359, 363-64, 22 P3d 237, *rev den*, 332 Or 558 (2001) (mayor's decision to reject a request sent via letter that the mayor either (1) "sponsor an ordinance that would exempt towing companies from [a particular] fee" or (2) "direct the city's police department not to collect the fee from the [towing] companies" was not a quasi-judicial decision, in part because the mayor "was under no legal obligation to respond to [the request] or, if she did, to

give anything other than a political response," and, therefore, "the letter did not initiate a process that was bound to result in a decision").

We next turn to the second factor identified in *Strawberry Hill 4 Wheelers*—*viz.*, was the decision-maker bound to apply preexisting criteria to concrete facts? Petitioner also contends that this factor points toward a conclusion that respondents' decision not to remove him from the MCDAO's *Brady* list was quasi-judicial. In support of that argument, he argues "preexisting criteria" exist and that "*Brady v. Maryland* and its progeny form the nexus of th[ose] criteria."

We disagree with petitioner that the second *Strawberry Hill 4 Wheelers* factor points toward a conclusion that respondents' decision not to remove him from the MCDAO's *Brady* list was quasi-judicial. To the extent petitioner is contending that a prosecutor's constitutional obligations under *Brady* and its progeny form the "pre-existing criteria" respondents were bound to apply, petitioner's argument is flawed in two ways. First, although *Brady* and its progeny impose certain minimum disclosure requirements on prosecutors, *Brady* is the constitutional floor, not the ethical ceiling: as noted above, we understand prosecutors to have the authority to decide that, even though the United States Constitution, as interpreted through *Brady* and its progeny, does not impose disclosure requirements with regard to a particular law-enforcement witness, the particular law-enforcement witness should not be called as a witness by the state. And in this case, the MCDAO determined not only that petitioner's conduct implicated its disclosure obligations under *Brady* and its progeny, but also, more broadly, that petitioner could not "withstand the strict scrutiny required of law enforcement witnesses in criminal prosecutions."

Second, and more fundamental to this appeal, petitioner's argument does not address what "preexisting criteria" respondents were "bound to apply" when *reconsidering* their initial determination that petitioner could not "withstand the strict scrutiny required of law enforcement witnesses in criminal prosecutions." That is because *Brady*

and its progeny do not address what criteria a prosecutor is "bound to apply" when reconsidering the prosecutor's decision not to call a particular law enforcement officer as a witness.

Given the lack of preexisting criteria prosecutors are bound to apply, we understand the determination of whether, and what criteria to use, in reconsidering whether a particular law enforcement officer should not be called as a witness to be a discretionary determination, made by prosecutors in the exercise of their prosecutorial function, under which they must give consideration not only to their constitutional and ethical obligations, but also to whether they, in good conscience, could proceed to trial and obtain a conviction with a particular officer as a witness. In making such a determination, elected district attorneys are "held accountable not by the constraints of logic or rules of evidence"—as a court might be—"but by politics." *Babcock*, 193 Or App at 454. Given those considerations, we cannot say that "preexisting criteria" exist within the meaning of *Strawberry Hill 4 Wheelers* when a prosecutor is reaching a decision regarding whether a law enforcement officer should be removed from a *Brady* list and called as a witness in the future. *See Collier v. City of Shady Cove*, 104 Or App 188, 192, 799 P2d 691 (1990) (holding that, "[g]iven the discretion that is left to cities, ORS 454.030 *et seq.* do not establish 'preexisting criteria' within the meaning of *Strawberry Hill 4 Wheelers* \*\*\* and related cases"); *Dodds*, 222 Or App at 134-35 (city council's decision to remove "open spaces" designation regarding a piece of property was not quasi-judicial where there was "no evidence in this record of specific objective criteria that the city applied to its redesignation of the property"). That is, the discretion exercised by a district attorney in making a determination regarding whether to call a particular law enforcement officer as a witness at trials, and, as germane here, how and when to reconsider a decision not to call a particular law enforcement officer as a witness at trials, involves a "value judgment," entrusted to the district attorney. *Strawberry Hill 4 Wheelers*, 287 Or at 608-09 ("[I]f the present plaintiffs' petition had been limited to allegations that defendants' decision was wrong on the merits because the road 'may be useful as a part of the

general road system' or because 'the public (would not) be benefited by the vacation,' \* \* \* the petition should have been dismissed \* \* \* because these are value judgments entrusted to the county court, at least unless it is alleged that the county court has made or adopted findings that are inconsistent with its conclusion.").[7]

We next turn to the third factor identified in *Strawberry Hill 4 Wheelers*—*viz.*, was the decision directed at a closely circumscribed factual situation or a relatively small number of persons? Respondents acknowledge, and we agree, that this factor points toward a conclusion that the decision not to remove petitioner from the MCDAO's *Brady* list was quasi-judicial. Nevertheless, at least in the context of this case, that factor alone does not transform respondents' decision not to remove petitioner from the MCDAO's *Brady* list into a quasi-judicial one. *Babcock*, 193 Or App at 454 ("[D]efendants did not engage in a quasi-adjudicative process, despite the fact that their decision applied only to the particular situation of two individuals."); *Hicks*, 270 Or App at 546-48 (concluding the action at issue was not quasi-judicial where, although the "third

---

[7] In support of his argument regarding the second *Strawberry Hill 4 Wheelers* factor, petitioner also points to the "Best Practices" document he attached to his petition and, as we understand his position, argues that that document describes how *Brady* should be applied by prosecutors in various factual scenarios.

Petitioner's reliance on the "Best Practices" document with regard to the second *Strawberry Hill 4 Wheelers* factor does not aid his argument. That document lists examples of conduct that prosecutors should consider "under the totality of the circumstances" when deciding if a law enforcement officer "cannot be called by the State"—*e.g.*, "[o]pinions of colleagues," "[s]cope and seriousness of crime committed or alleged to have been committed," and "bias." But, given the discretion left to prosecutors, those examples of conduct that might, under the totality of circumstances, lead a prosecutor to determine that a law enforcement officer should not be called as a witness by the state are not "pre-existing criteria" within the meaning of *Strawberry Hill 4 Wheelers*, especially given that prosecutors are not bound to apply them in making such a determination. *Babcock*, 193 Or App at 454 ("[G]eneral factors such as those named by plaintiffs—factors that the governing body is not 'bound to apply'—are not preexisting criteria that significantly limit the board's discretion and thereby create a quasi-adjudication."). Consequently, those examples do not demonstrate that this factor points toward a conclusion that respondents' decision not to remove petition from the *Brady* list was quasi-judicial. *Collier*, 104 Or App at 192; *Dodds*, 222 Or App at 135. Nor do they address the issue here: What are the "preexisting criteria" respondents were "bound to apply" when *reconsidering* their determination that petitioner could not "withstand the strict scrutiny required of law enforcement witnesses in criminal prosecutions"?

*Strawberry Hill 4 Wheelers* factor * * * points toward a determination that the action for which plaintiff seeks review was quasi-judicial" the other two "criteria point in a different direction," and the absence of "procedural requirements" indicated that the determination at issue was not quasi-judicial).

In sum, we conclude that respondents' decision not to remove petitioner from the MCDAO's *Brady* list did not involve the exercise of a quasi-judicial function. It was, instead, the sort of discretionary process and decision, informed by value judgments, that is not subject to challenge via a writ of review. *Dodds*, 222 Or App at 134.

In reaching this conclusion, we are mindful that placement on a *Brady* list can have "grave employment consequences" for law enforcement personnel, and that, as a general matter, there are not "strong substantive and procedural protections to guard against mistakenly or unfairly placing an officer on the *Brady* list." Jonathan Abel, *Brady's Blind Spot: Impeachment Evidence in Police Personnel Files and the Battle Splitting the Prosecution Team*, 67 Stan L Rev 743, 781 (2015); *see also id.* ("Even if, on appeal, the officer overturns the misconduct finding that landed him on the *Brady* list, the prosecutor can continue to label the officer as a *Brady* cop if he doubts the officer's credibility.").[8] Nonetheless, a writ of review is not the proper mechanism to challenge respondents' decision not to remove petitioner from the MCDAO's *Brady* list. Therefore, we affirm the trial court.

Affirmed.

---

[8] Legislative action can, of course, blunt the impact of such *Brady* list determinations. *See, e.g.*, Cal Gov't Code § 3305.5(a) ("A punitive action, or denial of promotion on grounds other than merit, shall not be undertaken by any public agency against any public safety officer solely because that officer's name has been placed on a Brady list, or that the officer's name may otherwise be subject to disclosure pursuant to Brady v. Maryland (1963) 373 U.S. 83.").

We note that our decision does not address the merits of petitioner's claim that the MCDAO's failure "to remove petitioner from the *Brady* list was in error." It might have been. We decide only that respondents' decision not to remove petitioner from the MCDAO's *Brady* list is not subject to challenge via a writ of review.