No. 227 March 19, 2025 27

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

1448 28TH AVENUE, LLC,
an Oregon limited liability company
and Santino Filipelli,
an individual,
*Plaintiffs-Appellants,*

*v.*

CITY OF PORTLAND,
a municipal corporation of the State of Oregon,
*Defendant-Respondent.*

Multnomah County Circuit Court
21CV12433; A181615

Leslie G. Bottomly, Judge.

Argued and submitted February 7, 2025.

Gregory S. Hathaway argued the cause and filed the briefs for appellants. Also on the briefs was Hathaway Larson LLP.

Denis M. Vannier argued the cause and filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Plaintiffs 1448 28th Avenue, LLC and Santino Filipelli, the LLC's sole member, appeal from a judgment of the trial court dismissing for lack of jurisdiction their declaratory judgment action against the City of Portland, which challenged the city's failure to grant a final certificate of occupancy for a commercial space owned by plaintiffs. We conclude that the trial court did not err and therefore affirm.

Plaintiffs own a two-story mixed-use building in Northeast Portland. The ground floor is commercial, and the second floor is residential. Plaintiffs obtained a permit from the city for a remodel of the ground-floor commercial space. The permit was conditioned upon plaintiffs' removal of a driveway adjacent to the building that was not in compliance with the city's safety standards.

Plaintiffs remodeled the commercial space but did not remove the driveway, and the city has withheld a final occupancy permit for the commercial space until the driveway is removed. Plaintiffs challenge the city's decision through this action for declaratory judgment. The trial court dismissed plaintiffs' action, determining that it lacked jurisdiction over plaintiffs' declaratory judgment action, because a writ of review was the exclusive form of challenge to the city's decision. Plaintiffs assign error to the trial court's granting of the city's motion for summary judgment, contending that the court erred in determining that it lacked jurisdiction to consider plaintiffs' declaratory judgment claim.

We review preliminarily the requirements for a writ of review. ORS 34.020 provides, in part:

"Except for [certain proceedings] any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, and not otherwise. Upon a review, the court may review any intermediate order involving the merits and necessarily affecting the decision or determination sought to be reviewed."

ORS 34.040(1) provides:

"The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310 (1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a)   Exceeded its jurisdiction;

"(b)   Failed to follow the procedure applicable to the matter before it;

"(c)   Made a finding or order not supported by substantial evidence in the whole record;

"(d)   Improperly construed the applicable law; or

"(e)   Rendered a decision that is unconstitutional.

"(2)   The fact that the right of appeal exists is no bar to the issuance of the writ."

ORS 34.102(2) provides, in part, that, if a writ of review is available, then the decision must be reviewed under ORS 34.010 to ORS 34.100.

Our caselaw has interpreted ORS 34.040 to require that a writ of review is the only method available for reviewing a local government action that was "adjudicative" or "quasi-judicial." *Lane v. Marion County D.A.'s Office*, 310 Or App 296, 303, 486 P3d 38, 44 (2021); *see Dodds v. City of West Linn*, 222 Or App 129, 132, 193 P3d 24 (2008) ("[O]nly limited types of decisions—judicial or quasi-judicial decisions—are subject to the review authority of the courts on writ of review."); *see also Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm*, 287 Or 591, 602, 601 P2d 769 (1979) (distinguishing "adjudicative" and "legislative" functions). Local government actions that are adjudicative or quasi-judicial may only be reviewed by writ of review. In contrast, local government actions that are "legislative" or "ministerial" are not subject to writ of review, but must be reviewed by some other means, such as declaratory judgment. *State ex rel School Dist. 13 v. Columbia Co.*, 66 Or App 237, 674 P2d 608 (1983), *rev den*, 296 Or 829 (1984); *Graziano v. City Council of Canby*, 35 Or App 271, 273, 581 P2d 552, *rev den*, 284 Or 371 (1978) (Legislative and administrative decisions can only be judicially reviewed "by some other means such as a declaratory judgment, a suit in equity, or an action at law.").

Local governments engage in "legislative" functions, for which a writ of review is not available, when they enact local legislation by, for example, setting fees that apply generally. *See Collier v. City of Shady Cove*, 104 Or App 188, 192, 799 P2d 691 (1990) (setting residential sewer fees is a legislative function). Local governments engage in "ministerial" actions, for which a writ of review is not available, when they execute legal mandates that do not "involve any weighing of evidence or factfinding," but that are compelled by law, with "no judgment or discretion regarding the matter." *White v. Vogt*, 258 Or App 130, 143, 308 P3d 356 (2013). Local governments engage in an adjudicative or quasi-judicial functions when they "apply preexisting criteria to concrete facts." *Koch v. City of Portland*, 306 Or 444, 448, 760 P2d 252 (1988); *Strawberry Hill 4 Wheelers*, 287 Or at 602-03. In *Strawberry Hill 4 Wheelers*, the court described characteristics that identify an adjudicative action:

> "Generally, to characterize a process as an adjudication presupposes that the process is bound to result in a decision and that the decision is bound to apply preexisting criteria to concrete facts. *** [A] further consideration has been whether the action, even when the governing criteria leave much room for policy discretion, is directed at a closely circumscribed factual situation or a relatively small number of persons."

*Id.*

Our caselaw has come to recognize *Strawberry Hill 4 Wheelers* as identifying three considerations that bear on the determination whether a local government's process is adjudicative and therefore subject to a writ of review:

- Does the process, once begun, call for reaching a decision confined by preexisting criteria rather than by a wide discretionary choice of action or inaction?

- To what extent is the decision-maker bound to apply preexisting criteria to concrete facts?

- To what extent is the decision directed at a closely circumscribed factual situation or a relatively small number of persons?

*Dodds*, 222 Or App at 133 (noting that, in *Strawberry Hill 4 Wheelers*, "the Supreme Court explained that quasi-judicial

decisions subject to writ of review are those processes that meet three criteria"); *see also Hood River Valley v. Board of Cty. Commissioners*, 193 Or App 485, 495, 91 P3d 748 (2004) (citing *Strawberry Hill 4 Wheelers*, 287 Or at 602-04). The three considerations do not describe fixed elements of a quasi-judicial function but "characteristics that might indicate that a disputed action or decision-making process was judicial or quasi-judicial, as opposed to ministerial or legislative." *Lane*, 310 Or App at 303-04 (quoting *Hicks v. Central Point Sch. Dist.*, 270 Or App 532, 544, 348 P3d 307, *rev den*, 357 Or 743 (2015)). If the writ-of-review process is available, the writ-of-review statutes bar claims for declaratory or injunctive relief. ORS 34.102 (stating that, if a writ of review is available, then the decision must be reviewed under ORS 34.010 to ORS 34.102).

The determination whether the writ of review process was available here depends on whether the city's action was adjudicative, within the meaning of the term as described in *Strawberry Hill 4 Wheelers*. We therefore consider in more detail the largely undisputed facts giving rise to the current dispute.

It is undisputed that plaintiffs requested a permit for the remodel of the ground-level commercial space of 1448 28th Avenue. The materials submitted by plaintiffs did not refer to a driveway and, on the submitted drawings, the area where the driveway curb cut sits was labeled "wood fence."

The record shows that the city's actions consisted of the following: As required by Title 17 of the Portland City Code (PCC), plaintiffs' application was reviewed by the Portland Bureau of Development Services (BDS) and Bureau of Transportation (PBOT). The review revealed a driveway and curb cut on plaintiffs' site and adjacent to the side of plaintiffs' building that did not comply with the PCC.[1] In

---

[1] PCC 17.28.110 provides, as relevant:

"A. Purpose. Ensure that driveway locations promote the safe and orderly flow of pedestrians, bicycles, and vehicular traffic, preserve on-street parking, preserve or establish street trees, maximize opportunities for vegetated stormwater management, reduce conflicts with pedestrians and bicycles and enhance the pedestrian environment.

"* * * * *

"C. Driveway definition: For the purposes of this Code section, a driveway is a gravel or paved way for vehicular traffic extending from the roadway

particular, the driveway was closer than 25 feet from the intersection of NE 28th Avenue and NE Halsey Avenue. It did not permit vehicles to exit in a forward motion, as required by the PCC for NE 28th Avenue, a "collector" street. In addition, the driveway was "too narrow for modern vehicular circulation under Portland City Code Requirements," had a "blind corner nearby," and was adjacent to "an intersection that has known safety problems" and a "history of traffic crashes going back many years." In fact, the driveway did not meet the PCC definition of a "driveway," because it did not access parking. Indeed, plaintiffs' application did not even identify the driveway; the curb cut area was labeled as a "wood fence."

Because plaintiffs' driveway was in violation of the PCC, plaintiffs' building-permit application triggered the city to require either the removal or modification of the driveway. Plaintiffs could have challenged the city's determination through a driveway-design exception but they chose not to do so. And plaintiffs were not interested in attempting to modify the driveway. Instead, plaintiffs agreed to add a curb to close the driveway. They completed an application for a "minor improvement permit," which allows them to add a curb, so that the permitting process could continue. With the addition of a curb as a condition, the city approved a permit for the remodel.

Several months later, plaintiffs sought a final occupancy permit. But plaintiffs had not constructed the curb to

---

to the adjacent property line(s) for the purpose of providing access to parking as provided under PCC Chapter 33.266.

"D. Reconstruction and Revocation of Existing Driveways.

"1. The Director of the Bureau of Transportation may revoke any driveway permit or require the modification of any driveway if:

"a. The area occupied by the driveway is needed for right-of-way purposes; or

"b. Continued operation of the driveway interferes with the safe and orderly flow of pedestrians, bicycles or vehicular traffic; or

"c. The abutting owner has failed to comply with all specifications and conditions of the permit; or

"d. The driveway does not access a legal parking space on abutting property per PCC Title 33.

"2. The Council may revoke any driveway permit if it deems such action will be in the public interest."

close the driveway, as permitted by the minor improvement permit. As a result, the city denied the request for a final occupancy permit, citing the permit's condition for removal of the driveway. In a letter to plaintiffs' legal counsel, the city attorney explained:

> "The applicant acquired a minor improvement permit to close the driveway with this remodel work as a condition of PBOT approving the building permit. This driveway closure continues to be required and final occupancy will not be issued until such time as this driveway is permanently closed."

Plaintiffs objected, contending that the "historic residential driveway" should not even have come into consideration, because its use was only by the second-floor residential space, which was not implicated by the remodeled ground-level commercial space. The city responded that it does not matter which portion of the structure is being remodeled or whether the space is commercial or residential—the city's focus for the driveway requirement is on the site, not the various uses of the site. And the city explained that, although the city has authority under the PCC to require the removal or upgrade of any nonconforming driveway at any time (even one that is "historic"), its policy is to wait until a permit is sought for a development of the property before requiring an upgrade or removal of a nonconforming driveway.

Plaintiffs disagreed and chose to file this declaratory judgment action, which, as noted, the trial court rejected, concluding that it lacked jurisdiction. Plaintiffs' primary arguments under their single assignment of error are that the actions of the city on plaintiffs' permit were not quasi-judicial under the *Strawberry Hill 4 Wheelers* criteria and, further, that the "historic residential driveway" was not implicated by the remodel of the commercial space.

The city responds that the city's decision to decline to issue the permanent occupancy permit until the driveway is removed falls within the quasi-judicial category described in *Strawberry Hill 4 Wheelers*, and we agree.

We address each of the criteria.

*Does the process, once begun, call for reaching a decision confined by preexisting criteria rather than by a*

*wide discretionary choice of action or inaction?* Plaintiffs requested a final certificate of occupancy. The request would either be approved or denied and was thus bound to result in a decision. And the city's decision to deny the request pending removal of the driveway was confined by preexisting criteria—those rules set forth in the PCC relating to nonconforming driveways and established city policy that upgrades to or removal of nonconforming driveways would be required upon application for development of a property.

*To what extent is the decision-maker bound to apply preexisting criteria to concrete facts?* The undisputed record shows that the city has fixed procedures and criteria that it applies in evaluating development permits and that, in making the decision that plaintiffs were required to remove the driveway before a final certificate of occupancy would be issued, the city applied those preexisting criteria, including the rules set forth in the PCC. The undisputed record further shows that, in making the decision that the driveway must be removed, the city made its determination based on undisputed concrete facts.

*To what extent is the decision directed at a closely circumscribed factual situation or a relatively small number of persons?* Plaintiffs concede that the city's decision was directed at a closely circumscribed factual situation and a relatively small number of persons.

The considerations identified by the Supreme Court in *Strawberry Hill 4 Wheelers* each weigh in favor of a determination that the city's action was "adjudicative" or quasi-judicial. The record further persuades us that the city's action falls within the adjudicative or quasi-judicial category described in *Strawberry Hill 4 Wheelers* and was therefore subject to writ of review. For that reason, we conclude that the trial court did not err in determining that it lacked jurisdiction to consider plaintiffs' declaratory judgment action.[2]

Affirmed.

---

[2] Because we conclude that the trial court did not err in dismissing plaintiffs' declaratory judgment claim for lack of jurisdiction, we need not address plaintiffs' argument that the remodel of the commercial space did not implicate the "historic residential driveway."